# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00429-CV

**ElderCare Properties, Inc. d/b/a/ Valley Grande Manor, Appellant**

**v.**

**Texas Department of Human Services and Weslaco Nursing and Rehabilitation Center, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. 99-06519, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING

Appellant ElderCare Properties, a nursing home in Weslaco, appeals from a summary judgment that the Texas Department of Human Services did not violate any statute or constitutional provision by granting a special commissioner's waiver to ElderCare's competitor, Weslaco Nursing and Rehabilitation Center. ElderCare claims that the trial court erred in granting summary judgment raising three grounds: (1) that ElderCare has an inherent right to judicial review of the waiver; (2) that the special commissioner's waiver rule is invalid or improperly applied in this case; and (3) that ElderCare has a right to a contested case hearing under the Administrative Procedure Act.[1] We will affirm the judgment.

---

[1] Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2000 & Supp. 2001). For convenience we cite to current statutes and administrative rules when there has been no substantive change to the relevant provision since the time the cause of action arose.

**BACKGROUND**

The Texas Legislature has delegated to the Department of Human Services ("DHS") the authority to administer and monitor the Texas program of medical assistance to financially needy persons. Tex. Hum. Res. Code Ann. §§ 32.001-.052 (West 2001). Pursuant to this grant of authority DHS contracts with nursing homes to provide a certain number of beds for Medicaid patients. ElderCare Properties ("ElderCare") operates the Valley Grande Manor nursing home in Weslaco and is licensed to operate 147 nursing beds. Of those beds, ElderCare contracts with DHS to operate 142 as Medicaid beds for which ElderCare is reimbursed under the Medicaid program.[2]

In 1985, DHS established a moratorium on granting additional Medicaid contracts to regulate the number of Medicaid beds. The moratorium was formally adopted by rule in 1998 and is codified in the Texas Administrative Code. *See* 40 Tex. Admin. Code § 19.2322(c) (2001). However, there are several exceptions to the moratorium, including the special commissioner's waiver rule also adopted by DHS in 1998, and at issue here. *Id*. § 19.2322(e)(6). The special commissioner's waiver ("waiver") enables the commissioner of DHS to lift the moratorium and make additional beds available to applicants that can satisfy the waiver rule's criteria. Applicants operating existing nursing homes and those who wish to operate nursing homes may apply for the waiver. The issuance of a waiver does not require notice, a hearing, or findings of fact.

As noted above, there are other exceptions to the moratorium rule besides the special commissioner's waiver. *See* 40 Tex. Admin. Code §§ 19.2322(e)(1)-(9);19.2324. One, the high-

---

[2] In its pleadings and appellate brief ElderCare states that it operates 142 Medicaid beds; however, an affidavit attached to its original petition indicates that it increased its number of Medicaid beds to 147 in November 1998.

occupancy area (HOA) exception, is important for our discussion here. *Id.* § 19.2324. The HOA rule allows nursing homes to apply for additional Medicaid beds when the county occupancy rate of Medicaid beds reaches 90%.[3] *Id.* DHS then allocates beds on an equal basis to nursing homes that submit a qualifying application. *Id.* Throughout its brief, ElderCare complains that the waiver rule improperly circumvents the HOA exception to the moratorium. ElderCare argues that in the absence of the waiver, it would have been entitled to apply for additional beds under the HOA exception when the county occupancy rate of Medicaid beds in Hidalgo County reaches 90%.

In 1999, Weslaco Nursing and Rehabilitation Center ("Weslaco Nursing Center") received a waiver from DHS allowing it to build and operate a nursing home in Weslaco with ninety Medicaid-contracted beds. In a declaratory judgment action under the Administrative Procedure Act (APA), ElderCare sued DHS on the basis that the department should have held a contested case hearing on the waiver application, and that the waiver rule was unconstitutionally vague. DHS moved for summary judgment on the grounds that the waiver rule was valid and that the department was not required by any statute or constitutional provision to conduct a hearing on the matter. In a written response to the motion, accompanied by an affidavit, ElderCare repeated its initial claims and raised a new claim that it had an inherent right to judicial review of the waiver granted to Weslaco Nursing Center. DHS addressed these arguments in a written reply, including the claim to an inherent

---

[3] The occupancy rate is defined as the number of residents occupying certified Medicaid beds, divided by the number of existing certified Medicaid beds in a county or designated county commissioner precinct in the four most populated counties in the state. *See* 40 Tex. Admin. Code §19.2324(a)(3).

3

right of judicial review. Weslaco Nursing Center joined DHS in its motion for summary judgment which the trial court granted without specifying the grounds for its order.

## STANDARD OF REVIEW

The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). In reviewing the grant of summary judgment, we view the evidence in the light most favorable to the nonmovant and make every reasonable inference and resolve all doubts in favor of the nonmovant. *Nixon,* 690 S.W.2d at 548-49.

## DISCUSSION

### *Inherent Right to Judicial Review*

*A. Preservation of Error*

In its first issue, ElderCare claims an inherent right to judicial review of the waiver granted to Weslaco Nursing Center. We first address DHS's claim that ElderCare waived this issue by not asserting it in its pleadings below. While ElderCare did not raise the issue of an inherent right to review in its original petition, it states in its response to the summary judgment motion that "because DHS violated ElderCare's due process rights and adversely affected its vested property rights, DHS's actions are subject to appeal." Thus the question is whether ElderCare has preserved for review its claim to an inherent right to appeal when it raised the issue for the first time in its response to the summary judgment motion.

4

Issues a nonmovant contends avoid the movant's entitlement to summary judgment must be expressly presented by written motion or by other written response. Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). In this case, ElderCare needed to assert a right to judicial review to preclude summary judgment; it raised this issue in its response to summary judgment as required by Rule 166a(c), and having done so, has sufficiently preserved the issue for this appeal.

## B. *Inherent Right to Judicial Review*

ElderCare argues that it has an inherent right to judicial review of the waiver granted to Weslaco Nursing Center based on its alleged vested property rights to be allocated additional beds under the HOA exception to the moratorium on Medicaid beds and to optimize its Medicaid contract. In response, DHS argues that these claims are an expectancy and do not constitute vested property rights. We agree.

When the legislature remains silent or denies a right of judicial review, administrative decisions may nevertheless be challenged in court if they adversely affect a vested property right or otherwise violate some provision of the state or federal constitution. *City of Amarillo v. Hancock*, 239 S.W.2d 788, 790 (Tex. 1951); *see* U.S. Const. amend. XIV; Tex. Const. art. I, § 19.[4] However, the affected right must be more than "a mere expectation based upon an anticipated continuance of

---

[4] The vested property right test has two prongs. First ElderCare must show that the agency has deprived it of a vested property right; if it satisfies the first prong, the inquiry becomes whether due process was afforded ElderCare at the agency level. *Pickell v. Brooks*, 846 S.W.2d 421, 426 (Tex. App.—Austin 1992, writ denied). Because we conclude ElderCare does not have the vested rights it claims, we need not reach the second prong.

the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from the demand of another." *National Carloading Corp. v. Phoenix-El Paso Exp.*, 176 S.W.2d 564, 570 (Tex. 1943); *State v. Operating Contractors ABS Emissions*, Inc., 985 S.W.2d 646, 653 (Tex. App.—Austin 1999, pet. denied).

Generally, Texas courts have limited the right to judicial review of agency actions to instances in which the state permanently deprives an individual or entity of a state-conferred right, such as a state contract, a business permit, or payments under a government program. *See generally, House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654 (Tex. 1965) (invalidating agency's order cancelling tobacco permit); *Texas Dep't of Human Servs. v. Christian Care*, 826 S.W.2d 715 (Tex. App.—Austin 1992, writ denied) (reviewing rule that allowed withholding of Medicaid payments); *Texas State Dep't of Human Res. v. Silver Threads Co.*, 569 S.W.2d 49 (Tex. Civ. App.—1978, writ ref'd n.r.e.) (reviewing agency's termination of Medicaid contract). These cases involve the state taking away a tangible, state-conferred property interest that the individual or entity already possesses. *House of Tobacco*, 394 S.W.2d at 657.

Another line of cases recognizes a right to judicial review, even in the absence of state deprivation of a vested right when the vested right at issue is a franchise, or tantamount to a franchise. *See generally Chemical Bank & Trust Co. v. Falkner*, 369 S.W.2d 467 (Tex. 1963); *Brazosport Sav. & Loan Ass'n v. American Sav. & Loan Ass'n*, 342 S.W.2d 747 (Tex. 1961); *White Top Cab, Inc. v. City of Houston*, 440 S.W.2d 732, 734 (Tex. Civ. App.—Houston [14th Dist.] 1969, no writ). As we will discuss, ElderCare has waived the argument that it has a franchise entitling it to judicial

review in the absence of state deprivation of a vested right; thus we will confine our analysis to whether DHS has deprived ElderCare of a vested right.

ElderCare correctly points out that this court has recognized that a nursing home's Medicaid contract creates a vested property right entitling it to judicial review of an agency's action to cancel the contract. *Silver Threads*, 569 S.W.2d at 51. However, as DHS notes, ElderCare has not alleged that DHS has canceled or taken any action against ElderCare's Medicaid contract. Had the department sought to cancel ElderCare's contract, then by statute it would have been required to hold a contested-case hearing. *See* Tex. Hum. Res. Code Ann. § 32.034 (West 2001). Instead, ElderCare complains that the grant of the waiver to a *competing* nursing home adversely affects ElderCare's vested property right to receive additional Medicaid beds under the HOA exception. ElderCare argues that the grant of the waiver to Weslaco Nursing Center will cause the occupancy rate of Medicaid beds to drop, thus decreasing the likelihood that the HOA rule will be triggered by high occupancy levels and diminishing ElderCare's opportunity to apply for additional beds.

We rejected a similar argument based on diminished opportunity in *S.C. San Antonio, Inc. v. Texas Department of Human Services*, 891 S.W.2d 773 (Tex. App.—Austin 1995, writ denied). In *S.C. San Antonio*, a Medicaid hospital claimed a vested property right to additional Medicaid funds distributed under a DHS-run competitive reimbursement program for hospitals serving a disproportionate share of low-income patients ("Dispro I program"). *Id.* Pointing to the fact that the hospital was fully reimbursed for the services it had provided, we held that the hospital did not have a vested right to additional reimbursement. *Id.* at 778. To receive the additional funds in any given year the hospital had to qualify and rank in the top tier of competing hospitals; thus it

7

had no more than an expectation of receiving additional reimbursement contingent on comparing its level of services with other hospitals. *Id.* Similarly, any right ElderCare has to additional beds is contingent on the HOA rule being triggered by high occupancy levels of Medicaid beds in the county and on ElderCare applying for the additional beds made available by the rule. Therefore, we conclude this claim is no more than a mere expectation "based on an anticipated continuance of existing law" and not a vested property right entitling ElderCare to judicial review. *National Carloading*, 176 S.W.2d at 570.

ElderCare also claims a vested right in "optimizing" the value of its Medicaid contract by "ensuring that its Medicaid beds not only receive optimum value, but give optimum value to the community, and that [sic] optimum value serves the public purpose as well as the intent of the Legislature." While it is not entirely clear what ElderCare means by "optimize" in this context, ElderCare appears to be simply repeating the argument discussed above that the waiver rule improperly circumvents the HOA exception by providing an additional method by which to obtain Medicaid beds. Again, we conclude that this claim is no more than a mere expectation and not a vested property right.[5]

Finally, in its motion for new trial and on appeal, ElderCare claims a vested right to be free of unlawful competition. Texas courts have recognized a basis for challenging unlawful

---

[5] ElderCare also claims a vested right in its reputation which it contends was damaged by DHS's implied finding of "no reasonable access to quality care"—one of the waiver criteria. For this argument, ElderCare cites *Martine* v. *Board of Regents*, 578 S.W.2d 465 (Tex. Civ. App.—Tyler 1979, no writ). However, *Martine* held only that a university professor has a vested right in his tenure and its discussion relating to reputation was dicta. Regardless, the harm ElderCare claims to its reputation is too indirect to confer a vested right.

competition, but only when an individual or organization possesses a franchise. *See Brazosport*, 342 S.W.2d at 750; *ABS Emissions*, 985 S.W.2d at 653; *White Top Cab,* 440 S.W.2d at 732. However, as DHS emphasizes, ElderCare did not raise this claim until its motion for new trial. As stated previously, for purposes of summary judgment, a nonmovant must expressly present to the trial court those issues that would defeat the movant's right to summary judgment. Tex. R. Civ. P.166a(c)*; Clear Creek*, at 678-679. If the nonmovant fails to do so, it may not later assign those issues as errors on appeal. *Id*. at 678. "[B]oth the reasons for the summary judgment and the objections to it must be in writing before the trial judge at the hearing." *Id.* at 677. Having failed to raise the issue of a right to challenge unlawful competition in the summary judgment proceedings below, ElderCare has not preserved this issue for appellate review.

Finding that ElderCare does not have a vested property right entitling it to judicial review of Weslaco Nursing Center's waiver, we overrule ElderCare's first issue.

### *Right to a Hearing Under APA*

In its third issue, ElderCare argues that DHS should have held an APA contested case hearing in connection with Weslaco Nursing Center's waiver application to afford ElderCare with the right to comment on the application. ElderCare does not contend that DHS's enabling statute and rules relating to the waiver provide for a contested case hearing, but instead argues for a broader application of the APA's contested case provisions. We have consistently rejected the interpretation that the APA creates an independent right to a contested case hearing in the absence of express statutory authority. *See Best & Co. v. Texas State Bd. of Plumbing Exam'rs,* 927 S.W.2d 306, 309 (Tex. App.—Austin 1996, writ denied).

9

ElderCare also directs us to Texas Government Code section 531.011 for authority that DHS is required to hold hearings on waiver applications; but as DHS correctly observes, this provision governs the Health and Human Services Commission, a separate agency, and is inapposite here. *See* Tex. Gov't Code Ann. § 531.011 (West 1998 & Supp. 2001).[6] In response to ElderCare's claims that DHS has acknowledged the need to provide hearings on waivers in the *Texas Register*, a review of that publication reveals only that, in 1999, the department received a comment on the issue and was working on procedures to alert the public of waiver requests; the waiver rule has not been subsequently amended to require a hearing. *See* 24 Tex. Reg. 5525-26 (1999); 40 Tex. Admin. Code Ann. §19.2322(e)(6) (West 2001).

Also, to the extent that ElderCare is claiming a statutory right to judicial review under section 2001.171 of the APA, we have repeatedly held that this section is a procedural provision that does not confer independent subject matter jurisdiction on the district court. *Carrizales v. Texas Dep't of Protective and Regulatory Servs.*, 5 S.W.3d 922, 924 (Tex. App.—Austin 1999, pet. denied). Finally, with regard to ElderCare's argument that it was not afforded *any* due process, we note that ElderCare does not contend that DHS adopted the waiver rule without complying with the rulemaking sections of the APA. ElderCare had an opportunity to voice its objections to the rule before it was adopted and failed to do so. We overrule ElderCare's third issue.

---

[6] ElderCare claims that Texas Government Code sections 531.022(a) and 531.022(b)(6) require DHS to develop a statewide plan for nursing facilities; however these provisions also apply only to the Health and Human Services Commission. *See* Tex. Gov't Code Ann. §§ 531.022(a), (b)(6).

***Validity of the Special Commissioner's Waiver***

In its second issue, ElderCare urges that summary judgment should have been denied because DHS failed to prove that the special commissioner's waiver rule is constitutionally valid, or in the alternative, that a waiver was properly granted to Weslaco Nursing Center. DHS counters that the rule is constitutional and that ElderCare has failed to identify any grounds that would entitle it to review of the nursing center's waiver. We agree.

ElderCare challenges the rule via a declaratory judgment action under section 2001.038 of the APA, which provides that the "validity or applicability of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038. The terms "validity" and "applicability" have not been precisely defined in the APA. *See* Ronald L. Beal, *Texas Administrative Practice & Procedure* § 12.1 (1997). A validity challenge tests a rule on procedural and constitutional grounds. *See Railroad Comm'n v. Arco Oil & Gas Co.*,876 S.W.2d 473, 477 (Tex. App.—Austin 1994, writ denied). In contrast, an applicability challenge does not question the overall validity of a rule, "but supplies the petitioner with the opportunity to obtain a judicial declaration of the application of an existing administrative rule to his particular fact situation." *See* Bob E. Shannon & James B. Ewbank, II, *The Texas Administrative Procedure And Texas Register Act Since 1976—Selected Problems*, 33 Baylor L. Rev. 393,421 (1981). Here ElderCare does not contest the grant or denial of a special commissioner's waiver as *applied to its own facility*; instead it challenges DHS's application of the waiver rule to Weslaco Nursing Center, a competing nursing home. ElderCare argues that the

11

commissioner failed to adhere to the waiver rule's criteria in granting the waiver to Weslaco Nursing Center, thus the nursing center's waiver is void. Because ElderCare is not asking the court to determine whether the waiver rule was properly applied to it, but instead to a third party, we will confine our analysis to whether the rule is constitutionally valid.

Citing our decision in *Christian Care*, ElderCare argues that DHS has no statutory authority to waive its contracting and control procedures, and that the waiver is not reasonable or necessary in light of the HOA exception to the moratorium. *Christian Care,* 826 S.W.2d at 719. ElderCare correctly states that DHS has only those powers expressly granted it by statute, together with those necessarily implied from the authority conferred or duties imposed. *Id*. DHS counters that the statute expressly grants it the power to establish procedures for controlling the number of Medicaid beds in nursing facilities.

We conclude that DHS has at least implied authority to adopt the waiver rule. Under a general grant of authority, an agency has all the implied authority reasonably necessary to accomplish a delegated purpose. *Id*. Section 32.021(c) of the human resources code expressly grants DHS rulemaking authority as necessary for the administration of the Medicaid program. Tex. Hum. Res. Code Ann. § 32.021(c) (West 2001). Section 32.001 states that the purpose of the chapter is to enable the state to provide medical assistance to needy individuals and to obtain all benefits authorized under applicable federal programs. *Id*. § 32.001. Section 32.002 requires that the chapter be liberally construed "so that adequate and high quality health care be made available to all children and adults who need the care and are not financially able to pay for it." *Id*. § 32.002. Section 32.0213(a), the source for the waiver rule, governs the allocation of Medicaid beds, providing: "The

12

department by rule shall establish procedures for: (1) controlling the number of Medicaid beds in nursing facilities; (2) decertification of unused Medicaid beds in nursing facilities; and (3) reallocation of nursing home beds decertified under Subdivision (2) to other nursing facilities." *Id.* § 32.0213(a).[7] One of the legislative goals of section 32.0213 is to encourage competition among Medicaid nursing homes. Act of May 29, 1997, 75th Leg., R.S., ch. 1452, art. II, Tex. Gen. Laws 5548, 5695. In addition, the stated benefit of the rule as proposed in the *Texas Register* is to make additional Medicaid beds available in facilities providing high quality care. 23 Tex. Reg. 2257 (1998).

---

[7] The remainder of section 32.0213 provides:

   (b)  The procedures established under this section must take into account the occupancy rate of the nursing facility.

   (c)  The department may exempt a nursing facility from the procedures established under this section if the facility:

      (1)  is affiliated with a state-supported medical school;

      (2)  is located on land owned or controlled by the state-supported medical school; and

      (3)  serves as a teaching facility for physicians and related health care professionals.

Tex. Hum. Res. Code. Ann. § 32.0213 (West 2001).

   ElderCare contends that because Weslaco Nursing Center's waiver does not fall within one of the exemptions listed in 32.0213(c), it is void. Section 32.0213(c) provides that DHS "may" exempt the facilities listed; it does not prohibit DHS from granting additional exemptions pursuant to its duty to control Medicaid beds. In addition to the waiver rule, there are nine other exceptions to the moratorium rule, only some of which are listed in the statute. *See* 40 Tex. Admin. Code § 19.2322(e)(1)-(9); 19.2324. Notably, the HOA rule that ElderCare favors is not listed in the statute. Moreover, section 32.0213(c) was added in 1999 and became effective *after* ElderCare filed its original petition on June 7, 1999; it did not apply at the time the claim arose. *See* Act of May 30, 1999, 76th Leg. R.S., ch. 1487, §1, sec. 32.0213, 1999 Tex. Gen. Laws 5133.

A key factor in determining whether a rule is within an agency's implied authority is whether the rule harmonizes with the general objectives of the statute. *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968); *Christian Care*, 826 S.W.2d at 721. The special commissioner's waiver rule authorized by section 32.0213 allows the commissioner to waive the moratorium and contract for beds with a licensed Medicaid nursing home that can satisfy the five criteria set forth in the rule. 40 Tex. Admin. Code § 19.2322(e)(6).[8] To receive a waiver, the nursing home must satisfy all five criteria, which include documenting an immediate need for Medicaid beds and documenting problems with the existing quality of care in the community. *Id.* In addition, the

---

[8] The relevant portions of section 19.2322(e)(6) provide:

Special commissioner's waiver.

(A) The commissioner of DHS has authority to waive the restriction on contracting in subsection (c) of this section and direct DHS to enter into Medicaid contracts with NFOs [nursing facility operator] that satisfy the requirements specified in this subparagraph. In a manner acceptable to DHS, each of these NFOs must:

  (i) document that there is a crisis and immediate need for additional Medicaid nursing-facility beds in the NFO's community;

  (ii) document that there are problems with the quality of care available in the NFO's community, and show that new Medicaid beds will remedy these problems;

  (iii) demonstrate that Medicaid residents in their community do not have reasonable access to quality nursing facility care;

  (iv) document strong community support for a new Medicaid nursing facility; and

  (v) demonstrate a history of quality care as specified in subsection (d) of this section. An applicant that has not owned or operated a nursing facility may apply . . . .

14

nursing home must complete construction of facilities and licensing within two years of receiving the waiver. *Id.* Our examination of the waiver rule leads us to conclude that the rule harmonizes with the general objectives of the statute by controlling the availability of beds while ensuring that the needs of Medicaid patients are met. In addition, the rule harmonizes with the Legislature's stated intent to increase competition among Medicaid facilities. We agree with DHS that the Legislature was not required to expressly outline the standards for granting a waiver in the enabling act. To require the Legislature to "include every detail and anticipate unforeseen circumstances in the statutes which delegate authority . . . would defeat the purpose of delegating legislative authority." *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992).

Furthermore, we also agree with DHS that the waiver rule's five criteria provide sufficient guidance to applicants and the commissioner and the rule is not, as ElderCare urges, unconstitutionally vague. ElderCare contends that the rule allows the commissioner "unbridled discretion" to grant or deny the waiver "without reference to any guiding principles." In support of this contention, ElderCare cites cases dealing with rules or ordinances that contained little or no criteria. For example, *Spann v. City of Dallas* involved a developer who successfully challenged a city ordinance that listed *no criteria* for the design of commercial buildings, leaving it solely to a building inspector's discretion. 235 S.W. 513, 517 (Tex. 1921). In *Railroad Commisson v. Shell Oil Co.*, Shell challenged a permit issued under a Railroad Commission exception to the well spacing rule, the purpose of which was to prevent waste or confiscation of property. 161 S.W.2d 1022, 1024-27 (Tex. 1942). The *Shell* court held the rule was arbitrary and capricious because there were *no criteria* to guide the commissioner in deciding whether an exception was necessary to achieve this

15

purpose. *Id.* Similarly, in *Texas Antiquities Committee v. Dallas County Community College District*, the supreme court struck down a statute in the Antiquities Code that failed to provide any standards for what types of buildings could be preserved because of "historical interest." 554 S.W.2d 924, 927-28 (Tex. 1977).

By contrast, the waiver rule provides five detailed criteria to guide the commissioner and applicants in the waiver process. *See* 40 Tex. Admin. Code § 19.2322(e)(6). An applicant must (1) document a crisis and immediate need for Medicaid beds, (2) document problems with the quality of care available in the community, (3) demonstrate that Medicaid residents do not have a reasonable access to quality nursing care, (4) document strong community support, and 5) demonstrate a history of quality of care.[9] *Id.*

Rules are presumed valid and the burden of demonstrating their invalidity is on the challenging party. *Browning-Ferris, Inc. v. Texas Dep't of Health*, 625 S.W.2d 764, 767 (Tex. App.—Austin 1981, writ ref'd n.r.e.). A rule violates due process "if it requires the doing of an act so vague that persons of common intelligence must guess at its meaning and differ as to its application." *Id.* at 765 (citing *Texas Liquor Control Bd. v. Attic Club*, 457 S.W.2d 41 (Tex. 1970)). As DHS points out, Texas courts confronted with vagueness challenges have upheld standards as minimal as "not worthy of the public confidence," "grossly unprofessional conduct," and "encourages misrepresentation." *Id.* at 767; *see also Key W. Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 845 (Tex. 1961) ("encourages misrepresentation"). The special commissioner's waiver rule identifies

---

[9] "Quality of care" is defined as an absence of serious Medicaid or licensing sanctions on the facility. *See* 40 Tex. Admin. Code § 19.2322(d) (2001); *see also* 23 Tex. Reg. 2258 (1998).

"a range of considerations" in its five detailed criteria that the commissioner must review in determining whether to grant a waiver. *Browning-Ferris*, 625 S.W.2d at 768. Thus, we agree with DHS that the waiver rule is sufficiently detailed and hold that the rule is not unconstitutionally vague.

Finally, ElderCare complains that the granting of the waiver to Weslaco Nursing Center was in reality an amendment of the moratorium rule, and thus DHS should have adhered to the notice and comment provisions in the rulemaking sections of the APA. As DHS points out, ElderCare does not contend that the *waiver rule* was not promulgated in accordance with the APA. The waiver rule was the subject of negotiated rulemaking sessions, a public hearing, and was published in the *Texas Register*. 23 Tex. Reg. 2257-63 (1998), *adopted* 23 Tex. Reg. 5450 (1998), (codified at 40 Tex. Admin. Code §19.2322(e)(6)). ElderCare has cited no authority for why each individual grant of the waiver should require a new round of notice and comment under the APA, and we reject this argument.

In sum, we hold that DHS acted within its authority in adopting the special commissioner's waiver rule and that the rule is not unconstitutionally vague. Therefore, we overrule ElderCare's second issue.[10]

## CONCLUSION

We conclude that DHS proved as a matter of law that ElderCare does not have a right to a contested case hearing or an inherent right to judicial review based on a vested property right.

---

[10] ElderCare also appeals on the ground that the trial court erred in granting summary judgment as a matter of law because DHS failed to meet its burden of proving that there were any circumstances under which ElderCare could be entitled to relief. We overrule this issue because it encompasses ElderCare's other three issues and does not present us with anything new to consider.

We further hold that DHS proved as a matter of law that it acted within its authority in adopting the special commissioner's waiver rule and that the rule is valid and not unconstitutionally vague. Accordingly, summary judgment was appropriate and the judgment of the trial court is affirmed.

_

_____

David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: December 6, 2001

Publish