# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00007-CV

### City Public Service Board of San Antonio, Appellant

### v.

### Public Utility Commission of Texas, Appellee

### FROM THE PUBLIC UTILITY COMMISSION OF TEXAS

The City Public Service Board of San Antonio ("San Antonio") brings this case as a direct appeal from the Public Utility Commission of Texas (the "Commission"), challenging the Commission's rule amending its procedure for setting wholesale electricity transmission rates (the "1999 Rule") pursuant to the direct appeal provision of the Public Utilities Regulatory Act.[1] *See* Tex. Util. Code Ann. § 39.001(e) (West Supp. 2002). The Commission moves to dismiss San Antonio's appeal contending that a direct appeal is improper under the facts presented here. We agree with the Commission and will dismiss.

## BACKGROUND

This dispute arises from the Commission's efforts to deregulate wholesale energy transmission within the Texas power grid. In 1995, the Legislature amended PURA, giving the

---

[1] The Public Utilities Regulatory Act (PURA) is codified as Title 2 of the Utility Code. Tex. Util. Code Ann. §§ 11.001-64.168 (West 1998 & Supp. 2002).

Commission the authority to approve wholesale transmission tariffs with the goal of eventually deregulating the transmission industry. Pursuant to that statutory authority, the Commission adopted a rule creating the standards for setting wholesale transmission tariffs for both privately and municipally owned utilities (the "1996 Rule"). The Commission then enacted a rate order setting tariffs according to the 1996 Rule. San Antonio, a municipally owned utility, challenged that rate order as being outside the scope of the Commission's authority. On appeal, this Court held that PURA did not grant the Commission the authority to set wholesale transmission rate tariffs and declared the 1996 Rule invalid. *City Pub. Serv. Bd. of San Antonio v. Public Util. Comm'n of Tex.*, 9 S.W.3d 868, 872 (Tex. App.—Austin 2000, pet. granted). The Supreme Court affirmed our decision in part and reversed in part, holding that while the Commission did have jurisdiction to set rates for privately owned utilities, it did not have jurisdiction to set rates for municipally owned utilities. *Public Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 321 (Tex. 2001). Therefore, the 1996 Rule and the resulting rate order were invalid as applied to municipally owned utilities, such as San Antonio. *Id.*

Prior to the supreme court's final decision, however, the Legislature had already amended PURA to extend the Commission's tariff-setting jurisdiction to include municipally owned utilities so that the Commission could establish a uniform tariff system for the entire state electricity grid. Tex. Util. Code Ann. §§ 39.001-.909 (West Supp. 2002). The Legislature included a provision allowing a direct appeal of a competition rule, provided the challenge is limited to contesting the *validity* of the rule. *Id.* § 39.001(e). After the amended version of PURA went into effect, the Commission promulgated the 1999 Rule, which established standards for transmission tariffs

2

applicable to both privately and municipally owned utilities. In addition to the 1999 Rule, the Commission issued two rate orders as to San Antonio that were effective for the last four months of 1999 (the "1999 Rate Order") and the 2000 calendar year (the "2000 Rate Order"). San Antonio responded to the Commission's actions by bringing this direct appeal pursuant to PURA section 39.001(e).

San Antonio argues that the 1999 and 2000 Rate Orders do not provide sufficient reimbursement for its costs in opening its transmission services to the Texas electricity grid at large. Those rate orders rely on the total cost of service figure originally formulated in 1997, according to the subsequently invalidated 1996 Rule, as a basis for their calculations.[2] In challenging the 1999 and 2000 Rate Orders, San Antonio makes two separate arguments: (1) the transmission tariffs established by the rate orders are invalid because they incorporate a total cost of service calculated in a 1997 contested case proceeding under the authority of an earlier, invalid rule, and (2) the 1999 Rule, which controlled both rate-making orders, is itself invalid because it does not specifically prohibit rates from being calculated using figures determined in an earlier proceeding that was later declared invalid. This appeal addresses only the second contention.[3]

---

[2] Total cost of service is calculated, in large part, based on expense and cost reports filed annually with the Federal Energy Regulatory Commission.

[3] San Antonio's challenge to the 1999 and 2000 Rate Orders, based on its first argument, is currently pending in two separate cases in the Travis County district courts. *City Pub. Servs. Bd. v. Public Util. Comm'n*, No. GV0-00116 (201st Dist. Ct., Travis County, Texas); *City Pub. Servs. Bd. v. Public Util. Comm'n*, No. GN0-02343 (353rd Dist. Ct., Travis County, Texas).

## THE CONTROVERSY

The crux of San Antonio's argument is that the 1999 Rule, by its silence, permitted the Commission, in propounding the 1999 and 2000 Rate Orders, to impermissibly carry forward cost of service figures from an earlier, invalidated proceeding. San Antonio contends that because the 1997 proceedings were void, the Commission cannot rely on the total cost of service figures then formulated to calculate the 1999 and 2000 Rate Orders. Consequently, San Antonio argues that the 1999 Rule is invalid because it does not prevent the Commission from using the 1997 cost of service figures in subsequent rate making determinations. San Antonio now challenges the 1999 Rule and the 1999 and 2000 Rate Orders as a single regulatory act designed to circumvent the earlier limits on the Commission's power in setting rates for municipally owned utilities.

The Commission urges us to dismiss San Antonio's claim, contending that it is a challenge to the application of agency policy rather than to the validity of a rule. The decision to resurrect the 1997 total cost of service figures, which is the target of San Antonio's complaint, was made in the process of creating the 1999 and 2000 Rate Orders. The 1999 Rule does not discuss the adoption of particular cost of service figures for any given time period. Therefore, the Commission argues, San Antonio's claim is a challenge to the *application* of deregulation policy in the two rate orders and not to the 1999 Rule.

## DISCUSSION

This Court is a court of limited jurisdiction. Tex. Const. art. V, § 6. We cannot hear a direct appeal from agency action except through a specific grant of statutory authority. *Yamaha Motor Corp. v. Motor Vehicle Div.*, 860 S.W.2d 223, 230 (Tex. App.—Austin 1993, writ denied).

4

Unless jurisdiction for direct review is explicitly granted, this Court must dismiss the complaint for lack of subject matter jurisdiction. *Id.*

San Antonio contends that this appeal is authorized by PURA's direct appeal provision, which reads as follows:

> (e) Judicial review of competition rules adopted by the commission shall be conducted under Chapter 2001, Government Code, except as otherwise provided by this chapter. Judicial review of the *validity* of competition rules shall be commenced in the Court of Appeals for the Third Court of Appeals District and *shall be limited to the commission's rule-making record*. The rule-making record consists of:
>
> (1) the notice of the proposed rule;
>
> (2) the comments of all interested persons;
>
> (3) all studies, reports, memoranda, or other materials on which the commission relied in adopting the rule; and
>
> (4) the order adopting the rule.

Tex. Util. Code Ann. § 39.001(e) (emphasis added). In this section, the Legislature expressly authorizes a direct appeal if the party seeking review limits its challenge to the *validity* of a competition rule. If a challenge does not fall within this narrow limitation, a party must bring its challenge pursuant to Chapter 2001 of the Government Code.[4] *Id.*; *see also* Tex. Gov't Code Ann. §§ 2001.038, .176 (West 2000) (party seeking judicial review of agency rule must file its petition in

---

[4] Chapter 2001 of the Government Code is the Administrative Procedure Act ("APA"). Tex. Gov't Code Ann. § 2001.002 (West 2000). The APA provides a uniform list of guidelines for agency rule-making as well as the process by which interested and affected parties may challenge agency action. *Id.* §§ 2001.021-.178 (West 2000 & Supp. 2002).

Travis County district court). The primary directive of section 39.001(e) instructs parties to challenge competition rules according to the provisions of the APA *unless* the challenge falls within the narrow limitation of a validity challenge. Tex. Util. Code Ann. § 39.001(e).

The Legislature did not include a definition of the terms "validity" and "applicability" in the Utility Code. Therefore we must rely on the well-settled rules of statutory interpretation in ascertaining the meaning of these terms. We give statutory language a true and fair interpretation, and a meaning that is not forced, exaggerated, or strained; the statutory words must fairly and clearly sustain the meaning assigned. *See Railroad Comm'n v. Miller*, 434 S.W.2d 670, 672 (Tex. 1968). "Validity" means having legal strength or force and being able to effect or accomplish what is designed or intended. Webster's Third New International Dictionary 2529-30 (1986). A validity challenge tests a rule on procedural and constitutional grounds. *Eldercare Props., Inc. v. Texas Dep't of Human Servs.*, 63 S.W.3d 551, 558 (Tex. App.—Austin 2001, pet. filed); *see also Railroad Comm'n v. Arco Oil & Gas Co.*, 876 S.W.2d 473, 477 (Tex. App.—Austin 1994, writ denied).[5] In contrast, an applicability challenge does not question the overall legitimacy of a rule. Rather, an applicability challenge provides the party challenging the rule the opportunity to obtain a judicial declaration of the implementation of the rule to its particular fact situation. *Eldercare*, 63 S.W.3d at 558.

---

[5] We recognize that *Eldercare* and *Arco* are cases involving challenges brought pursuant to the APA rather than PURA. *Eldercare Props., Inc. v. Texas Dep't of Human Servs.*, 63 S.W.3d 551, 558 (Tex. App.—Austin 2001, pet. filed); *Railroad Comm'n v. Arco Oil & Gas Co.*, 876 S.W.2d 473, 477 (Tex. App.—Austin 1994, writ denied). However, section 39.001(e) specifically references and employs identical terminology as the APA in differentiating between these two types of challenges.

It is a settled rule of statutory construction that the express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others. *State v. Mauritz-Wells Co.*, 175 S.W.2d 238, 241 (Tex. 1943). Under this doctrine, we must consider the Legislature to have excluded all types of review that are not explicitly included in the direct review provision. Because PURA explicitly provides for a direct appeal to this Court only in validity challenges, we lack jurisdiction to hear a direct appeal in all other challenges. Our task, therefore, is to determine whether San Antonio's challenge to the 1999 Rule comes within the statutory provision allowing direct appeal, that is, whether San Antonio challenges the 1999 Rule's validity.

San Antonio attempts to characterize this appeal as a challenge to the 1999 Rule's validity by claiming that it does not meet the overall objectives of the statute. San Antonio opines that PURA was enacted in order to implement energy deregulation by September 1, 1999. San Antonio further claims that the Commission's actions in promulgating the 1999 Rule and enacting the 1999 and 2000 Rate Orders, when viewed as an interrelated series of regulatory actions, comprise a single attempt at statutory compliance that violated this purported goal. Thus, San Antonio maintains that because the Commission, through a combination of its rules and rate orders, failed to comply with the Commission's statutory directive, its entire approach to deregulation is invalid. San Antonio provides no legal authority for this argument.

San Antonio correctly asserts that the Legislature enacted PURA to deregulate electric utilities. However, San Antonio's attempt to consolidate its 1999 Rule challenge along with the 1999 and 2000 Rate Orders as a single regulatory action fails. The Rule sets forth a guideline upon which the Commission must rely in setting transmission tariffs in subsequent proceedings. The Rate Orders

are the product of such proceedings. The fact that all three actions occurred in a fairly short time frame and all affect the manner in which municipal utilities will be reimbursed for their costs of service does not convert them into a single rule-making act. The Rule is silent as to how the Commission will go about the task of calculating the cost of service figures in future rate order proceedings.

In order to be invalid, the 1999 Rule must, on its face, contravene the legislative grant of power. *See, e.g.*, *Public Util. Comm'n v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Turner Bros. Trucking Co., Inc. v. Commissioner of Ins.*, 912 S.W.2d 386, 390 (Tex. App.—Austin 1995, no writ). San Antonio contends that the 1999 Rule is, in fact, facially invalid because of its silence as to whether it is acceptable to use the 1997 cost of service figures to calculate orders for 1999 and 2000. Essentially, San Antonio attempts to transform its applicability challenge into a validity challenge by stating that the Rule is facially invalid because of an omission. A challenge that a rule omits necessary material, thereby preventing a proper application to affected parties, is proper for a contested case proceeding, not a direct appeal to this Court. Such a challenge contests the rule's application, not its validity. The Commission did not decide to reuse the 1997 cost of service figures in the course of promulgating the 1999 Rule; the Commission chose to use those figures when it *applied* the Rule during the proceedings in which it adopted the 1999 and 2000 Rate Orders. Because the action complained of was taken in the two rate order proceedings, this challenge must first be presented in the district court. Tex. Gov't Code Ann. §§ 2001.021-.178 (West 2000 & Supp. 2002). We have no jurisdiction to hear a direct appeal of the application of regulatory policy.

Additionally, the Utility Code provides that challenges to the Commission's actions, including rate orders, must be brought under the substantial evidence rule. Tex. Util. Code Ann. §

8

15.001 (West 1998). Under that rule, the court reviews to determine whether, on the basis of the agency record, there was any reasonable basis for the Commission's actions. Tex. Gov't. Code Ann. § 2001.175(e) (West 2000); *see, e.g.*, *Gulf States Utils. Co. v. Public Util. Comm'n of Tex.*, 947 S.W.2d 887, 890 (Tex. 1997). The decision to use the 1997 cost of service figures in the 1999 and 2000 Rate Orders would be properly reviewed only under the substantial evidence rule.

The record available on direct appeal would not allow us to undertake the substantial evidence review required by law. PURA's direct appeal provision limits us to reviewing only the Commission's rule-making record. Tex. Util. Code Ann. § 39.001(e)(1)-(4) (West Supp. 2002). Because this suit is a purported challenge by direct appeal to the validity of the 1999 Rule, we can only look to the notice of the proposed rule, the comments of all interested persons, any materials on which the Commission relied in adopting the rule, and the order adopting the rule. *Id.* We are unable to review the records for the 1999 and 2000 Rate Orders. The relevant records of these orders and proceedings would only be available in an appeal conducted under Chapter 2001 of the Government Code, not a direct appeal. *Id.*; Tex. Gov't Code Ann. § 2001.060 (West 2000).

**CONCLUSION**

PURA's direct appeal provision only allows the judicial review process to begin in this Court when the challenging party contests the validity of a competition rule. In the present case, San Antonio challenges the application of the Commission's deregulation policy undertaken in the 1999 and 2000 Rate Orders. Because San Antonio does not confine its challenge to the validity of the 1999 Rule, we dismiss this appeal for want of subject-matter jurisdiction.

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Dismissed for Want of Subject-Matter Jurisdiction

Filed:   March 21, 2002

Publish