TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00007-CV






City Public Service Board of San Antonio, Appellant



v.



Public Utility Commission of Texas, Appellee






FROM THE PUBLIC UTILITY COMMISSION OF TEXAS






 The City Public Service Board of San Antonio ("San Antonio") brings this case as
a direct appeal from the Public Utility Commission of Texas (the "Commission"), challenging the
Commission's rule amending its procedure for setting wholesale electricity transmission rates (the
"1999 Rule") pursuant to the direct appeal provision of the Public Utilities Regulatory Act. (1) See
Tex. Util. Code Ann. § 39.001(e) (West Supp. 2002). The Commission moves to dismiss San
Antonio's appeal contending that a direct appeal is improper under the facts presented here. We
agree with the Commission and will dismiss.


BACKGROUND

 This dispute arises from the Commission's efforts to deregulate wholesale energy
transmission within the Texas power grid. In 1995, the Legislature amended PURA, giving the
Commission the authority to approve wholesale transmission tariffs with the goal of eventually
deregulating the transmission industry. Pursuant to that statutory authority, the Commission adopted
a rule creating the standards for setting wholesale transmission tariffs for both privately and
municipally owned utilities (the "1996 Rule"). The Commission then enacted a rate order setting
tariffs according to the 1996 Rule. San Antonio, a municipally owned utility, challenged that rate
order as being outside the scope of the Commission's authority. On appeal, this Court held that
PURA did not grant the Commission the authority to set wholesale transmission rate tariffs and
declared the 1996 Rule invalid. City Pub. Serv. Bd. of San Antonio v. Public Util. Comm'n of Tex.,
9 S.W.3d 868, 872 (Tex. App.--Austin 2000, pet. granted). The Supreme Court affirmed our
decision in part and reversed in part, holding that while the Commission did have jurisdiction to set
rates for privately owned utilities, it did not have jurisdiction to set rates for municipally owned
utilities. Public Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio, 53 S.W.3d 310, 321
(Tex. 2001). Therefore, the 1996 Rule and the resulting rate order were invalid as applied to
municipally owned utilities, such as San Antonio. Id.

 Prior to the supreme court's final decision, however, the Legislature had already
amended PURA to extend the Commission's tariff-setting jurisdiction to include municipally owned
utilities so that the Commission could establish a uniform tariff system for the entire state electricity
grid. Tex. Util. Code Ann. §§ 39.001-.909 (West Supp. 2002). The Legislature included a provision
allowing a direct appeal of a competition rule, provided the challenge is limited to contesting the
validity of the rule. Id. § 39.001(e). After the amended version of PURA went into effect, the
Commission promulgated the 1999 Rule, which established standards for transmission tariffs
applicable to both privately and municipally owned utilities. In addition to the 1999 Rule, the
Commission issued two rate orders as to San Antonio that were effective for the last four months of
1999 (the "1999 Rate Order") and the 2000 calendar year (the "2000 Rate Order"). San Antonio
responded to the Commission's actions by bringing this direct appeal pursuant to PURA section
39.001(e).

 San Antonio argues that the 1999 and 2000 Rate Orders do not provide sufficient 
reimbursement for its costs in opening its transmission services to the Texas electricity grid at large. 
Those rate orders rely on the total cost of service figure originally formulated in 1997, according to
the subsequently invalidated 1996 Rule, as a basis for their calculations. (2) In challenging the 1999
and 2000 Rate Orders, San Antonio makes two separate arguments: (1) the transmission tariffs
established by the rate orders are invalid because they incorporate a total cost of service calculated
in a 1997 contested case proceeding under the authority of an earlier, invalid rule, and (2) the 1999
Rule, which controlled both rate-making orders, is itself invalid because it does not specifically
prohibit rates from being calculated using figures determined in an earlier proceeding that was later
declared invalid. This appeal addresses only the second contention. (3)


THE CONTROVERSY

 The crux of San Antonio's argument is that the 1999 Rule, by its silence, permitted
the Commission, in propounding the 1999 and 2000 Rate Orders, to impermissibly carry forward
cost of service figures from an earlier, invalidated proceeding. San Antonio contends that because
the 1997 proceedings were void, the Commission cannot rely on the total cost of service figures then
formulated to calculate the 1999 and 2000 Rate Orders. Consequently, San Antonio argues that the
1999 Rule is invalid because it does not prevent the Commission from using the 1997 cost of service
figures in subsequent rate making determinations. San Antonio now challenges the 1999 Rule and
the 1999 and 2000 Rate Orders as a single regulatory act designed to circumvent the earlier limits
on the Commission's power in setting rates for municipally owned utilities.

 The Commission urges us to dismiss San Antonio's claim, contending that it is a
challenge to the application of agency policy rather than to the validity of a rule. The decision to
resurrect the 1997 total cost of service figures, which is the target of San Antonio's complaint, was
made in the process of creating the 1999 and 2000 Rate Orders. The 1999 Rule does not discuss the
adoption of particular cost of service figures for any given time period. Therefore, the Commission
argues, San Antonio's claim is a challenge to the application of deregulation policy in the two rate
orders and not to the 1999 Rule.


DISCUSSION

 This Court is a court of limited jurisdiction. Tex. Const. art. V, § 6. We cannot hear
a direct appeal from agency action except through a specific grant of statutory authority. Yamaha
Motor Corp. v. Motor Vehicle Div., 860 S.W.2d 223, 230 (Tex. App.--Austin 1993, writ denied). 
Unless jurisdiction for direct review is explicitly granted, this Court must dismiss the complaint for
lack of subject matter jurisdiction. Id.

 San Antonio contends that this appeal is authorized by PURA's direct appeal
provision, which reads as follows:



 Judicial review of competition rules adopted by the commission shall be
conducted under Chapter 2001, Government Code, except as otherwise provided
by this chapter. Judicial review of the validity of competition rules shall be
commenced in the Court of Appeals for the Third Court of Appeals District and
shall be limited to the commission's rule-making record. The rule-making
record consists of:

 
 the notice of the proposed rule;

 the comments of all interested persons;

 all studies, reports, memoranda, or other materials on which the
commission relied in adopting the rule; and

 the order adopting the rule.


 


Tex. Util. Code Ann. § 39.001(e) (emphasis added). In this section, the Legislature expressly
authorizes a direct appeal if the party seeking review limits its challenge to the validity of a
competition rule. If a challenge does not fall within this narrow limitation, a party must bring its
challenge pursuant to Chapter 2001 of the Government Code. (4) Id.; see also Tex. Gov't Code Ann.
§§ 2001.038, .176 (West 2000) (party seeking judicial review of agency rule must file its petition
in Travis County district court). The primary directive of section 39.001(e) instructs parties to
challenge competition rules according to the provisions of the APA unless the challenge falls within
the narrow limitation of a validity challenge. Tex. Util. Code Ann. § 39.001(e).

 The Legislature did not include a definition of the terms "validity" and "applicability"
in the Utility Code. Therefore we must rely on the well-settled rules of statutory interpretation in
ascertaining the meaning of these terms. We give statutory language a true and fair interpretation,
and a meaning that is not forced, exaggerated, or strained; the statutory words must fairly and clearly
sustain the meaning assigned. See Railroad Comm'n v. Miller, 434 S.W.2d 670, 672 (Tex. 1968). 
"Validity" means having legal strength or force and being able to effect or accomplish what is
designed or intended. Webster's Third New International Dictionary 2529-30 (1986). A validity
challenge tests a rule on procedural and constitutional grounds. Eldercare Props., Inc. v. Texas
Dep't of Human Servs., 63 S.W.3d 551, 558 (Tex. App.--Austin 2001, pet. filed); see also Railroad
Comm'n v. Arco Oil & Gas Co.,876 S.W.2d 473, 477 (Tex. App.--Austin 1994, writ denied). (5) In
contrast, an applicability challenge does not question the overall legitimacy of a rule. Rather, an
applicability challenge provides the party challenging the rule the opportunity to obtain a judicial
declaration of the implementation of the rule to its particular fact situation. Eldercare, 63 S.W.3d
at 558.

 It is a settled rule of statutory construction that the express mention or enumeration
of one person, thing, consequence, or class is equivalent to an express exclusion of all others. State
v. Mauritz-Wells Co., 175 S.W.2d 238, 241 (Tex. 1943). Under this doctrine, we must consider the
Legislature to have excluded all types of review that are not explicitly included in the direct review
provision. Because PURA explicitly provides for a direct appeal to this Court only in validity
challenges, we lack jurisdiction to hear a direct appeal in all other challenges. Our task, therefore,
is to determine whether San Antonio's challenge to the 1999 Rule comes within the statutory
provision allowing direct appeal, that is, whether San Antonio challenges the 1999 Rule's validity.

 San Antonio attempts to characterize this appeal as a challenge to the 1999 Rule's
validity by claiming that it does not meet the overall objectives of the statute. San Antonio opines
that PURA was enacted in order to implement energy deregulation by September 1, 1999. San
Antonio further claims that the Commission's actions in promulgating the 1999 Rule and enacting
the 1999 and 2000 Rate Orders, when viewed as an interrelated series of regulatory actions, comprise
a single attempt at statutory compliance that violated this purported goal. Thus, San Antonio
maintains that because the Commission, through a combination of its rules and rate orders, failed
to comply with the Commission's statutory directive, its entire approach to deregulation is invalid. 
San Antonio provides no legal authority for this argument.

 San Antonio correctly asserts that the Legislature enacted PURA to deregulate electric
utilities. However, San Antonio's attempt to consolidate its 1999 Rule challenge along with the
1999 and 2000 Rate Orders as a single regulatory action fails. The Rule sets forth a guideline upon
which the Commission must rely in setting transmission tariffs in subsequent proceedings. The Rate
Orders are the product of such proceedings. The fact that all three actions occurred in a fairly short
time frame and all affect the manner in which municipal utilities will be reimbursed for their costs
of service does not convert them into a single rule-making act. The Rule is silent as to how the
Commission will go about the task of calculating the cost of service figures in future rate order
proceedings.

 In order to be invalid, the 1999 Rule must, on its face, contravene the legislative grant
of power. See, e.g., Public Util. Comm'n v. Gulf States Util. Co., 809 S.W.2d 201, 207 (Tex. 1991);
Turner Bros. Trucking Co., Inc. v. Commissioner of Ins., 912 S.W.2d 386, 390 (Tex. App.--Austin
1995, no writ). San Antonio contends that the 1999 Rule is, in fact, facially invalid because of its
silence as to whether it is acceptable to use the 1997 cost of service figures to calculate orders for
1999 and 2000. Essentially, San Antonio attempts to transform its applicability challenge into a
validity challenge by stating that the Rule is facially invalid because of an omission. A challenge
that a rule omits necessary material, thereby preventing a proper application to affected parties, is
proper for a contested case proceeding, not a direct appeal to this Court. Such a challenge contests
the rule's application, not its validity. The Commission did not decide to reuse the 1997 cost of
service figures in the course of promulgating the 1999 Rule; the Commission chose to use those
figures when it applied the Rule during the proceedings in which it adopted the 1999 and 2000 Rate
Orders. Because the action complained of was taken in the two rate order proceedings, this
challenge must first be presented in the district court. Tex. Gov't Code Ann. §§ 2001.021-.178
(West 2000 & Supp. 2002). We have no jurisdiction to hear a direct appeal of the application of
regulatory policy.

 Additionally, the Utility Code provides that challenges to the Commission's actions,
including rate orders, must be brought under the substantial evidence rule. Tex. Util. Code Ann.
§ 15.001 (West 1998). Under that rule, the court reviews to determine whether, on the basis of the
agency record, there was any reasonable basis for the Commission's actions. Tex. Gov't. Code
Ann. § 2001.175(e) (West 2000); see, e.g., Gulf States Utils. Co. v. Public Util. Comm'n of Tex.,
947 S.W.2d 887, 890 (Tex. 1997). The decision to use the 1997 cost of service figures in the 1999
and 2000 Rate Orders would be properly reviewed only under the substantial evidence rule.

 The record available on direct appeal would not allow us to undertake the substantial
evidence review required by law. PURA's direct appeal provision limits us to reviewing only the
Commission's rule-making record. Tex. Util. Code Ann. § 39.001(e)(1)-(4) (West Supp. 2002). 
Because this suit is a purported challenge by direct appeal to the validity of the 1999 Rule, we can
only look to the notice of the proposed rule, the comments of all interested persons, any materials
on which the Commission relied in adopting the rule, and the order adopting the rule. Id. We are
unable to review the records for the 1999 and 2000 Rate Orders. The relevant records of these
orders and proceedings would only be available in an appeal conducted under Chapter 2001 of the
Government Code, not a direct appeal. Id.; Tex. Gov't Code Ann. § 2001.060 (West 2000).


CONCLUSION

 PURA's direct appeal provision only allows the judicial review process to begin in
this Court when the challenging party contests the validity of a competition rule. In the present
case, San Antonio challenges the application of the Commission's deregulation policy undertaken
in the 1999 and 2000 Rate Orders. Because San Antonio does not confine its challenge to the
validity of the 1999 Rule, we dismiss this appeal for want of subject-matter jurisdiction.



 __________________________________________

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Dismissed for Want of Subject-Matter Jurisdiction

Filed: March 21, 2002

Publish

1. The Public Utilities Regulatory Act (PURA) is codified as Title 2 of the Utility Code. Tex.
Util. Code Ann. §§ 11.001-64.168 (West 1998 & Supp. 2002).
2. Total cost of service is calculated, in large part, based on expense and cost reports filed
annually with the Federal Energy Regulatory Commission.
3. San Antonio's challenge to the 1999 and 2000 Rate Orders, based on its first argument, is
currently pending in two separate cases in the Travis County district courts. City Pub. Servs. Bd. v.
Public Util. Comm'n, No. GV0-00116 (201st Dist. Ct., Travis County, Texas); City Pub. Servs. Bd.
v. Public Util. Comm'n, No. GN0-02343 (353rd Dist. Ct., Travis County, Texas). 
4. Chapter 2001 of the Government Code is the Administrative Procedure Act ("APA"). Tex.
Gov't Code Ann. § 2001.002 (West 2000). The APA provides a uniform list of guidelines for
agency rule-making as well as the process by which interested and affected parties may challenge
agency action. Id. §§ 2001.021-.178 (West 2000 & Supp. 2002).
5. We recognize that Eldercare and Arco are cases involving challenges brought pursuant to
the APA rather than PURA. Eldercare Props., Inc. v. Texas Dep't of Human Servs., 63 S.W.3d 551,
558 (Tex. App.--Austin 2001, pet. filed); Railroad Comm'n v. Arco Oil & Gas Co.,876 S.W.2d 473,
477 (Tex. App.--Austin 1994, writ denied). However, section 39.001(e) specifically references and 
employs identical terminology as the APA in differentiating between these two types of challenges.