TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00566-CV






Office of Public Utility Counsel, Appellant


v.


Public Utility Commission of Texas; Reliant Resources, Inc.; and Staren Power, L.L.C.,
d/b/a Texas Star Energy Co., Appellees







DIRECT APPEAL FROM THE PUBLIC UTILITY COMMISSION OF TEXAS





O P I N I O N




 In this direct appeal, the Office of Public Utility Counsel ("Public Counsel")
challenges two amended rules promulgated by the Public Utility Commission ("the Commission")
as being outside the scope of the Commission's authority under chapter 39 of the utility code. See
Tex. Util. Code Ann. §§ 39.001-.909, 39.001(f) (West Supp. 2003). The challenged rules deal with:
(1) the authority of competitive retail electricity providers to request disconnection of customer
electricity service and (2) the rate to be charged by Providers of Last Resort, the default electricity
providers under deregulation. See 27 Tex. Reg. 8428, 8463-65, 8474 (2002) (to be codified at 16
Tex. Admin. Code §§ 25.43, 25.483). Because we believe the amended rules are within the
Commission's statutory authority, we will affirm them as amended.


BACKGROUND


 The general outline of Texas's deregulation scheme has been addressed in detail. 
E.g., Reliant Energy, Inc. v. Public Util. Comm'n, 62 S.W.3d 833, 835-36 (Tex. App.--Austin 2001,
no pet.). Under the regulated system, a single utility generated electricity, built and maintained the
electricity distribution grid, and sold the electricity to consumers. As we explained in Reliant
Energy, under deregulation those three functions are to be unbundled into three separate entities:
power generation companies, transmission and distribution utilities, and retail electricity providers
("REPs"). See Tex. Util. Code Ann. § 39.081. Under this system, the REPs sell the power generated
by the power generation companies through the distribution system maintained by the transmission
and distribution utilities. When deregulation is fully implemented, the REPs will charge consumers
market-based rates rather than Commission-set rates. Chapter 39 provides for a transitional phase
during which the Commission will continue to exercise a significant amount of control over the rate
structure and enumerates specific rights, held by consumers, that will be the basis for continued
Commission oversight of the REPs. Because this controversy revolves around the scope of those
protections and their effect on the deregulated system, we will give a brief background discussion
on the scope of chapter 39's consumer-protection provisions.


The Regulated System

 Under a fully regulated system, an electricity utility enters into a "regulatory compact"
with the public: in return for a monopoly over electricity service in a given area; the utility agrees
to provide service to all requesting customers and to charge only the retail rates set by the
Commission. See Fred Bosselman et al., Energy, Economics and the Environment, 150-58
(Foundation Press 2000). It is presumed the Commission will set rates at a "just and reasonable"
level. See Tex. Util. Code Ann. § 36.003(a) (West 1998). Although the utilities participate in the
rate-setting process, id. §§ 36.101-.111, and have the right to recover for some expenditures through
the rate charged to the public, see id. §§ 36.201-.208, the Commission has discretion to set the rates
charged to consumers. Id. § 36.003.

 In addition to charging customers at a commission-set rate, regulated utilities are
required to guarantee service to all customers in their area of responsibility. See id. § 37.051(a). 
Because consumers have a right to service in regulated areas, their service may be disconnected only
in limited circumstances. Monopoly electricity utilities may not discontinue, reduce, or impair
service to any part of their territories except for: (1) nonpayment of charges; (2) nonuse; or (3)
another similar reason that occurs in the usual course of business. Id. § 37.152(a). (1) Any such
disconnection or reduction in service is required to comply with the consumer-protection rules
established by the Commission. Id. § 37.152(b). The Commission, by rule, has consistently
provided procedural safeguards preventing the utilities from disconnecting service without good
cause. See Hidden Oaks v. City of Austin, 138 F.3d 1036, 1046 (5th Cir. 1998) (section 37.512
creates a right to receive electricity service unless the utility can "show cause" for disconnection).

 The consumer's right to service is not absolute. By statute, service may be
disconnected after notice if a customer fails to pay or make deferred-payment arrangements for past
service by the date of disconnection, fails to comply with a deferred-payment agreement, or violates
other aspects of the service agreement. Tex. Util. Code Ann. § 25.29(b) (West 1998). Customers
shall not be disconnected due to a utility abandoning its allotted area. Id. § 25.29(f). Additional
statutory provisions prevent disconnection of the ill and disabled, id. § 25.29(g), energy-assistance
clients, id. § 25.29(h), and disconnection during extreme weather, id. § 25.29(i). These specific
provisions ensure that consumers will be protected from service disconnection only in particular
factual circumstances. The applicable Commission rule provides that these consumer-protections
constitute the minimum requirement and that each electric utility is encouraged to develop policies
that treat its customers with dignity and respect. 16 Tex. Admin. Code § 25.29(a) (2002). 


The Deregulated System

 As of January 1, 2000, each privately owned monopoly electric utility had to divest
itself of its retail electricity sales activities and assign them to a REP. See Tex. Util. Code Ann.
§ 39.051(b). When the transmission, generation, and retail activities of a former monopoly utility
continue to be held by a common holding company, the resulting REP is known as an "affiliated
REP." See id. § 39.081(c). By contrast, REPs that are not part of a former utility held in a common
holding company are generally known as "competitive REPs." Because the rates charged by REPs
will be determined by market forces, the Commission has less oversight over the utility's activities. 
Under the new system, consumers are exposed, among other things, to potential: (1) market-price
manipulation by incumbent utilities and affiliated REPs; (2) decisions by REPs not to serve given
areas or customer classes; and (3) poor treatment of consumers on billing and service matters, the
traditional area of concern under the regulated system. See Jim Rossi, The Common Law 'Duty to
Serve' and Protection of Consumers in an Age of Competitive Retail Public Utility Restructuring,
51 Vand. L. Rev. 1233, 1288-94 (1998) (laying out the policy implications involved in providing
guaranteed service under retail electricity deregulation).

 In response to these concerns, Texas has maintained some control over electricity
prices during the transition to a deregulated pricing system. On January 1, 2002, deregulated pricing
took effect. Tex. Util. Code Ann. § 39.202(a). Between 2002 and 2007, affiliated REPs and
competitive REPs are required to charge different amounts to their residential and small commercial
customers. Id. Affiliated REPs are required to charge the "Price to Beat." Id. Subject to various
calculations for fuel-cost adjustments, the Price to Beat is set at six percent less than the utility's
corresponding average residential and small commercial rates in effect on January 1, 1999. Id.
§ 39.202(a). By contrast, chapter 39 does not provide a pricing mechanism for competitive REPs. 
Consequently, this pricing mechanism both caps the price the affiliated REP can charge residential
and small commercial consumers and prevents the affiliated REP from cutting its rates dramatically
in order to prevent competitive REPs from entering a service area. See Reliant Energy, 62 S.W.3d
at 837 (discussing the concept of "headroom," the margin by which competitive REPs will be able
to cut their prices in order to compete with the affiliate REPs). Affiliated REPs are held to the Price
to Beat for their residential and small commercial consumers until the transition period is over or
until at least forty percent of the market in a region is served by competitive REPs. Tex. Util. Code
Ann. § 39.202(e).

 Texas has adopted a system for protecting consumers in situations where REPs are
unwilling to provide service to a particular area or class of customer. To ensure access to electricity
service, chapter 39 requires that a Provider of Last Resort ("POLR") be designated for each
distribution area. Any customer is entitled to be served by the POLR under a standard service
package determined by the Commission. See id. § 39.101(b)(4). The POLR is to be a REP, chosen
by a competitive mechanism or designated by the Commission. Id. § 39.106. The POLR thus
ensures that all consumers will be offered electricity service.

 Apart from the issues of price controls and guaranteed service, the deregulated system
still involves the same potential for abuse by the utility that existed under the regulated system. 
Because the Commission has less direct control over REPs than it had over monopoly utilities, the
legislature provided specific consumer-protections to govern these interactions. In line with the
earlier protections set out by Commission rule, chapter 39 enumerates various consumer rights which
can be enforced against all REPs. Id. §§ 39.101(a)-(d),(e). These include, among other things,
protection from: disconnection in weather or medical emergencies, id. § 39.101(a)(1),
discrimination, id. § 39.101(a)(5), involuntary changes in electricity provider, id. § 39.101(b)(2), and
protection from misleading and deceptive practices, including sham billing, id. § 39.101(b)(6). At
core, the Commission must ensure at least the same level of customer protection against potential
abuses and the same quality of service that existed before implementation of deregulation. Id.
§ 39.101(f). 


The Controversy

 This dispute concerns the Commission's amendment of rules regarding: (1)
disconnection of service for nonpayment and (2) the POLR service rate.


The Disconnection Rule

 The Commission's initial rule allowed only POLRs to request disconnection of
customer service when customers failed to pay. (2) See 26 Tex. Reg. 125, 188 (2001) (amended by 27
Tex. Reg. 8428 (2002) (to be codified at 16 Tex. Admin Code § 25.483)). This rule reflected the
Commission's concern that the deregulation process would disrupt electricity service--severe supply
problems in Georgia had stemmed, at least in part, from granting the natural gas providers the right
to terminate service. See 27 Tex. Reg. 8428, 8428-8430 (2002). The rule required a REP that no
longer wished to serve a given customer to transfer that customer directly to the POLR for the area,
without any interruption in service. Id. In effect, this meant that nonpaying customers would
automatically be transferred to the POLR before their service could be disconnected entirely. 

 In adopting the amended rule, however, the Commission determined that the
competitive REPs would, after 2004, be able to request disconnection of non-paying customers
without transferring them to the POLR. See 27 Tex. Reg. 8428, 8474 (2002) (to be codified at 16
Tex. Admin Code § 25.483) ("the Disconnection Rule"). Because it no longer believed that giving
retail providers authority to request disconnection had not caused the natural gas crisis in Georgia,
the Commission adopted a different approach to the role POLRs and affiliated REPs would play in
deregulation. See id. at 8428-29. The Commission determined that, as opposed to customers who
received no electricity service because of market forces, customers who were delinquent in paying
their bills would not be entitled to be automatically transferred to POLR service. Id. After
September 4, 2002, non-paying customers are to be transferred to the affiliated REP in much the
same way as they would have been transferred to the POLR under the initial rules, being charged the
applicable Price to Beat. Disconnection Rule § 25.483(b). Then, after October 2004, all REPs will
be allowed to request disconnection of non-paying customers. Id. § 25.483(b)(2). REP
disconnection will only be allowed if the Commission makes a finding in 2004 that the REP
disconnection authority is not contrary to the public interest. Id. The consumer protections
embodied in chapter 39 and those protections carried over from the regulated disconnection rules
remain part of the disconnection process. Id. § 25.483 (e)-(j). 


The POLR Rate Rule

 A second rule initially selected POLRs and set the POLR rate by a competitive-bidding process, with the default rate set at the Price to Beat. See 25 Tex. Reg. 10899, 10916 (2000)
(repealed by 27 Tex. Reg. 8428 (2002) (to be codified at 16 Tex. Admin Code 25.43)). If no
electricity providers stepped forward to offer POLR service, the POLR would be determined by the
Commission, and its rate would be set at the Price to Beat. Id.

 Under the initial rule, however, the Commission had a difficult time finding
electricity companies willing to serve as POLRs. The amended rule provides that the POLR rate will
be set at a level at or above the Price to Beat, with a ceiling of twenty-five percent greater than the
Price to Beat. 27 Tex. Reg. 8428, 8463-65 (2002) (to be codified at 16 Tex. Admin Code § 25.43)
("the POLR Rate Rule"). POLRs may now, in effect, charge between the Price to Beat and twenty-five percent above the Price to Beat. POLR Rate Rule, § 25.483(k)(2)-(3). The POLR Rate Rule
treats affiliated REPs that serve as a POLR different from other REPs bidding to serve as a POLR. 
A POLR is to be selected in one of two ways: through a competitive-bidding process or, if there are
no interested bidders, by lottery. Id. § 25.43(l). REPs may bid to provide POLR service at a rate
equal to or higher than the Price to Beat, not to exceed a rate twenty-five percent higher than the
Price to Beat. Id. However, affiliated REPs may only serve as POLRs if they bid to provide POLR
service at the lowest price, the Price to Beat. Id. § 25.43(h)(2). If no REPs, affiliated or competitive,
participate in the bidding process, the POLR is to be selected by lottery and the rate charged to
residential and small non-residential customers will be set at the highest allowable rate, twenty-five
percent greater than the Price to Beat. Id. § 25.43(k)(4). Finally, the rate charged by the POLR may
be adjusted by the Commission for good cause to ensure that it is sufficient to recover the POLR's
cost of providing service. Id. § 25.43(k)(5).


The Public Counsel's Challenge

 Public Counsel, which took part in both the rulemaking and amendment proceedings,
now brings this direct appeal to challenge the validity of the amended rules. See Tex. Util. Code
Ann. § 39.001(f). Relying on chapter 39's provisions regarding POLR service and the Price to Beat,
see id. §§ 39.101(b)(4), .106, .202, Public Counsel argues that chapter 39 creates an affirmative right
in consumers to be offered: (1) POLR service "without interruption" and (2) electric service at or
under the applicable Price to Beat. Public Counsel argues that, because the Commission's rules may
only be adopted in order to further and enforce the consumer-protections created by chapter 39, id.
§ 39.101(e), any rule that is contrary to the specific rights to POLR disconnection and Price to Beat
rates is outside the Commission's statutory authority. Public Counsel, as an additional matter, argues
that the Disconnection Rule was not adopted in conformity with the APA's reasoned justification
requirement because the Commission did not explicitly address Public Counsel's argument regarding
the construction of sections 39.101(b)(4) and 39.106 of chapter 39.

 The Commission, joined by Reliant Resources, Inc., and Staren Power, L.L.C., (3)
responds that chapter 39 does not create affirmative consumer rights to have their service transferred
to the POLR in cases of non-payment and does not create the Price to Beat as a cap on the rates
charged by POLRs. The Commission asserts that the amended rules violate no specific requirement
of chapter 39, and therefore do not impermissibly interfere with its statutory intent. Likewise,
regarding the reasoned justification challenge, the Commission argues that the Commission's
response to Public Counsel's comment can be determined from reading the whole of the
Commission's order adopting the amended rules. Because we disagree with Public Counsel's 
narrow reading of chapter 39, we will affirm the Commission's rules as amended.


DISCUSSION

 Because this case is a direct appeal to this Court under section 39.001(f) of the utility
code, we are limited to reviewing the rules' validity. See Tex. Util. Code. Ann. 39.001(f) (West
Supp. 2003); City Pub. Serv. Bd. of San Antonio v. Public Util. Comm'n, 96 S.W.3d 355, 359 (Tex.
App.--Austin 2002, no pet.). A validity challenge tests a rule on procedural and constitutional
grounds. Id. An agency rule is presumed valid, and the challenging party bears the burden to
demonstrate its invalidity. McCarty v. Texas Parks & Wildlife Dep't, 919 S.W.2d 853, 854 (Tex.
App.--Austin 1996, no writ). The crux of Public Counsel's argument is that the amended
Disconnection and POLR Rate Rules exceed the Commission's statutory authority. Absent specific
or implied statutory authority, an agency rule will be void because made without legal authority. 
Public Util. Comm'n v. City Pub. Serv. Bd. of San Antonio, 53 S.W.3d 310, 315 (Tex. 2001); Sexton
v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 137 (Tex. App.--Austin 1986, writ ref'd n.r.e.).

 The law prohibits agencies from exercising what is effectively a new power, or a
power contradictory to the statute, based merely on a claim that the power is expedient for
administrative purposes. Public Util. Comm'n v. GTE-Southwest, Inc., 901 S.W.2d 401, 407 (Tex.
1995). Although an agency's rules must comport with the agency's authorizing statute, the
Legislature does not need to include every specific detail or anticipate all unforeseen circumstances. 
Railroad Comm'n v. Lone Star Gas Co., 844 S.W.2d 679, 689 (Tex. 1992). To establish the rules'
facial invalidity, Public Counsel must, then, show that each rule: (1) contravenes specific statutory
language; (2) runs counter to the general objectives of the statute or (3) imposes additional burdens,
conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. See City
of Corpus Christi v. Public Util. Comm'n, 51 S.W.3d 231, 236 (Tex. 2001); Public Util. Comm'n
v. Gulf States Util. Co., 809 S.W.2d 201, 207 (Tex. 1991); Turner Bros. Trucking Co., Inc. v.
Commissioner of Ins., 912 S.W.2d 386, 390 (Tex. App.--Austin 1995, no writ).

Statutory Authority for the Disconnection Rule

 Chapter 39 provides that all consumers have the right "to be served by a provider of
last resort that offers a commission-approved standard service package." Tex. Util. Code Ann.
§ 39.101(b)(4). The Commission has statutory authority to adopt rules as necessary to enforce
consumer rights, including the regulation of POLR service, and explicit authority to adopt rules
regarding termination of electric service. Id. § 39.101(e). (4) Two subparagraphs lay out the POLR's
obligation to consumers in its area of responsibility:


§ 39.106 Provider of Last Resort . . .


(c) A provider of last resort shall provide the standard retail service package to a
requesting customer in the territory for which it is the provider of last resort. . .


(g) In the event that a retail electric provider fails to serve any or all of its
customers, the provider of last resort shall offer that customer the standard retail
service package for that customer class with no interruption of service to any
customer.


Id. §§ 39.106(c), (g) (emphasis added).

 Public Counsel takes the position that section 39.106's requirement that POLR
service be offered "without interruption in service to any customer" prevents the Commission from
adopting a rule that allows for any potential gap in service between the time a REP decides to stop
providing electricity to a customer and the time that customer begins to receive POLR electricity
service. Public Counsel argues that the Disconnection Rule provides that, when a customer is
disconnected following a request by the customer's REP, the customer will have to apply to the
POLR for service. Therefore, according to Public Counsel, the Disconnection Rule adds a non-statutory regulatory requirement in addition to the "without interruption" standard and adopts a
standard that conflicts with the overall purpose and objective of chapter 39.

 The Commission denies that the "no interruption of service" requirement mandates
that only POLRs be given authority to request disconnection of customer service. The Commission
argues that section 39.106(g) at most requires the POLR to offer service to disconnected customers
without interruption in service, not to guarantee continuous electricity service during any conflict
with the REP. The Commission takes the position that, because the POLR will be in the position
of offering consumers the opportunity to have service without interruption, the Disconnection Rule
does not run afoul of section 39.106. The Commission asserts that, in the end, the same core
consumer-protections will apply to disconnection of service, regardless of whether the POLR or the
REP disconnects the customer from service. See Tex. Util. Code Ann. § 39.101(a)(3) (requiring
clear billing), (a)(8), (a)(9) (requiring information in English and Spanish regarding low-income
assistance programs and deferred payment plans), (b)(5),(b)(6) (requiring adequate information be
given consumers regarding consumer choice and protecting consumers from unfair billing practices);
see also Disconnection Rule §§ 25.483(m), (n) (setting out requirements for disconnection notices
in accordance with chapter 39's requirements). 

 We agree with the Commission's argument that the Disconnection Rule does not
violate the requirements of section 39.106(g). Consumers will be offered service and, if they
complete the application process provided for by the Commission, will receive that service with no
interruption in service. This is a reasonable reading of the statute. The Commission's interpretation
does not contradict section 39.106(g) or add an additional requirement to the statutory framework. (5) 

 Furthermore, in construing the Commission's authority, we must look to the statute
as a whole, not section 39.101 in isolation. See Reliant Energy, 62 S.W.3d at 839. Chapter 39
requires the Commission to maintain at least the same level of consumer-protection in a restructured
electric industry as existed on December 31, 1999. Tex. Util. Code Ann. § 39.101(f). Prior to
deregulation, consumers were not protected from disconnection based on their own nonpayment of
electricity bills. The specific consumer-protections adopted by the amended Disconnection Rule
mirror the protections available under the deregulated system. We cannot say that the Disconnection
Rule, as adopted, runs counter to chapter 39's overall intent as expressed in provisions such as
section 39.101(f).

 Our role in assessing a rule's validity is to carry forward statutory directives, rather
than weigh the wisdom of a particular policy. See Railroad Comm'n v. Lone Star Gas Co., 599
S.W.2d 659, 662 (Tex. App.--Austin 1980, writ ref'd n.r.e.). We cannot say that the Commission's
adoption of a different policy in the Disconnection Rule from that contained in the initial rule
violates the specific provisions of section 39.106 or the general statutory purpose of chapter 39, or
that it adds an additional regulatory requirement inconsistent with the statute. Accordingly, we
overrule Public Counsel's first issue.


Reasoned Justification of the Disconnection Rule

 As an additional challenge to the Disconnection Rule, Public Counsel asserts that its
adoption violates the APA's reasoned justification requirement. The reasoned justification
requirement serves to reinforce the process of "notice and comment" rulemaking. See Tex. Gov't
Code Ann. §§ 2001.021, .034 (West 2000). We review a reasoned justification under an arbitrary
and capricious standard, with no presumption that facts exist to support the agency's order. See
Reliant Energy, 62 S.W.3d at 841. Our inquiry serves to determine whether the Commission's
explanation of the facts and policy concerns it relied upon when it adopted the rule demonstrates that
the Commission considered all the factors relevant to the objectives of the Commission's delegated
rulemaking authority, and engaged in reasoned decision making. Id. The Commission is not
required to address each separate argument explicitly, but instead must generally discuss the
evidence opposing the rule and provide reasons for the agency's actions. See National Ass'n of
Indep. Insurers v. Texas Dep't of Ins., 888 S.W.2d 198, 210 (Tex. App.--Austin 1994), rev'd on
other grounds at 925 S.W.2d 667 (Tex. 1996). The Commission acts arbitrarily if in making a
decision it: (1) omits from its consideration a factor that the Legislature intended the Commission
to consider; (2) includes in its consideration an irrelevant factor; or (3) reaches a completely
unreasonable result after weighing only relevant factors. Reliant Energy, 62 S.W.3d at 841.

 During the notice and comment process, Public Counsel filed a comment to the effect
that the proposed amendments violated the purported right to continuous POLR service under
chapter 39, sections 39.101(b)(4) and 39.106. (6) The Commission mentioned the comment in its
adoption order. See 27 Tex. Reg. at 8440. No element of the Commission's final order explicitly
states that the Commission is responding to Public Counsel's comment. However, in response to
an issue raised by another participating party, the Commission stated that it interpreted section
39.106 as providing a safety net to protect customers from loss of service due to aberrant market
behavior. Id. at 8432. The Commission opined that there was no statutory requirement ensuring
provision of service to non-paying customers. Id. In addition, the Commission offered a detailed
analysis of its reasons for adopting a different policy from that adopted in the initial rule. See id.
(explaining that original rule had been based on concerns arising from deregulation of natural gas
service in Georgia, but that further analysis had shown these dangers were not present in Texas
electricity market).

 The order as published explains the Commission's interpretation of the relevant
provisions of chapter 39 and offers a rational justification for its decision to change the consumer-protection rules. We have already held that the Commission's interpretation was consistent with the
relevant statutory language. The crux of Public Counsel's argument appears to be that the particular
language in which the Commission discussed its interpretation of the relevant statutory language was
not referenced as a specific response to Public Counsel's comment. Public Counsel's challenge at
most raises a technical defect in the adopting order. Absent a showing of prejudice to a given right
or privilege, a technical defect is insufficient to invalidate an otherwise valid rule. Tex. Gov't Code
Ann. § 2001.035(d) (West 2000). Public Counsel's second issue is overruled.


Statutory Authority for the POLR Rate Rule

 Chapter 39 provides that the rate charged by a POLR is to be set at a fixed, non-discountable rate approved by the Commission for each designated class of customers. Tex. Util.
Code Ann. § 39.106(b). As we have already discussed, a separate section of chapter 39 provides that
affiliated REPs will be required to charge the Price to Beat, which is calculated to be six percent less
than the pre-deregulation rates, adjusted for fuel costs. See id. § 39.202(a). In the case of low-income residential consumers, chapter 39 provides that their rates will be set at ten percent less than
the lower of the Price to Beat or the POLR rate. See id. § 39.903(h).

 Public Counsel takes the position that the Price to Beat constitutes a consumer
protection, creating a ceiling on consumer prices for every residential or small commercial consumer
in a given deregulated area. Public Counsel asserts that the Price to Beat applies to all REPs,
affiliated and competitive. Therefore, Public Counsel argues, chapter 39 requires the Commission
to continue the policies adopted in the initial rule because the POLR rate can never be greater than
the Price to Beat. According to Public Counsel, any rule allowing the POLR rate to be set above the
Price to Beat violates chapter 39.

 The Commission responds that the Price to Beat does not constitute a general
consumer-protection because it applies only to affiliated REPs. We agree. Chapter 39 only requires
affiliated REPs to charge the Price to Beat during the transition period. The Price to Beat does not
apply to competitive REPs. (7) Any affiliated REP that serves as a POLR will do so at the Price to Beat
under the POLR Rate Rule. For competitive REPs, there is no statutory requirement that the POLR
rate be capped at the Price to Beat. Indeed, we note that chapter 39 expressly provides that the rate
charged to low-income consumers is to be based on the lower of the POLR rate or the Price to Beat,
suggesting that the Price to Beat may well be lower than the POLR rate. Id. § 39.903(h). Nothing
in chapter 39 suggests that the Price to Beat necessarily has any bearing on the Commission's
calculation of the rate to be charged by POLRs.

 Although the amended POLR Rate Rule presents us with a change in Commission
policy, our task is only to determine whether the rule as amended conflicts with the Commission's
explicit statutory authority. See Lone Star Gas, 599 S.W.2d at 662. Chapter 39 requires that the
POLR rate be set at a "fixed, non-discountable rate approved by the Commission." See Tex. Util.
Code Ann. § 39.106 (b). Public Counsel does not argue that the mechanism for setting the POLR
rate fails to meet this requirement. (8) Because Public Counsel has not demonstrated that the POLR
Rate Rule contradicts chapter 39's specific statutory provisions, we overrule its third issue.


CONCLUSION

 Because the Disconnection and POLR Rate Rules are consistent with chapter 39's
objectives and do not contradict or impermissibly add to the Commission's statutory grant of
authority, we affirm them as amended.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: April 10, 2003

1. The statutory language establishing electricity deregulation exempts from mandatory
deregulation those utilities that are owned by municipalities and cooperative associations. See Tex.
Util. Code Ann. § 39.002 (West Supp. 2003). Accordingly, the old statutory provisions, which have
not been repealed, still apply to consumers living in those areas. Our discussion deals only with the
consumer-protection mechanisms created for those consumers who find themselves in areas in which
deregulation has been implemented.
2. Because POLRs and REPs do not actually control the distribution system, they must send
a request to the transmission and distribution utility, which actually disconnects the consumer's
electric service.
3. Because their positions are substantially similar, we will refer to the appellees collectively
as "the Commission," except where necessary to refer to a specific appellee for the purpose of
clarity.
4. Section 39.101(e) reads:


 The commission has the authority to adopt and enforce such rules as may
be necessary or appropriate to carry out Subsections (a)-(d) including rules for
minimum service standards for a retail electric provider relating to customer
deposits and the extension of credit, switching fees, levelized billing programs,
interconnection and use of on-site generation, termination of service and quality
of service. . . 



Tex. Util. Code Ann. § 39.101(e) (emphasis added).
5. We also note that section 39.101(h) provides that "A retail electric provider . . . may not
disconnect service to a residential customer during and extreme weather emergency or on a weekend
day. . . ." Tex. Util. Code Ann. § 39.101(h). In effect, this prevents the REP from disconnecting
customer service only in particular circumstances. We do not believe it is inconsistent with chapter
39 for the Commission to allow REPs to request customer service disconnection in situations other
than those explicitly proscribed by statute.
6. In its adoption order, the Commission mentioned Public Counsel's concern regarding
section 39.106, but not section 39.101(b)(4). Appellee Reliant asserts that the record does not
support the conclusion that Public Counsel raised an issue regarding section 39.101(b)(4) in its
comments. See 27 Tex. Reg. 8428, 8440 (2002). Because the two provisions are substantially
similar and because we believe that the adoption order, when taken as a whole, adequately accounts
for Public Counsel's comment, we will address the issue as though Public Counsel had commented
on both sections 39.106 and 39.101(b)(4).
7. Section 39.202(a) provides that "an affiliated retail electric provider shall make available
to residential and small commercial customers of its affiliated transmission and distribution utilities"
electric service rates set at the Price to Beat. Tex. Util. Code Ann. § 39.202(a) (emphasis added).
8. Originally, Public Counsel appealed the POLR Rate Rule on the ground that rates
calculated under its provisions would not be "fixed" within the meaning of section 39.106(b). Public
Counsel has waived that issue, and we will not address it.