ACCEPTED
03-16-00222-CV
12945129
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/28/2016 10:59:37 AM
JEFFREY D. KYLE
CLERK

## No. 03-16-00222- CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/28/2016 10:59:37 AM
JEFFREY D. KYLE
Clerk

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS

### LMV – AL VENTURES, LLC,
*Appellant/Cross-Appellee*

**v.**

### TEXAS DEPARTMENT OF AGING AND DISABILITY SERVICES
### and COMMISSIONER JON WEIZENBAUM,
*Appellees/Cross-Appellants*.

## APPELLANT/CROSS-APPELLEE LMV-AL VENTURES, LLC'S
## RESPONSE TO APPELLEES/CROSS-APPELLANTS' BRIEF

From Cause No. D-1-GN-15-001219
in the 98th Judicial District Court,
Travis County, Texas

Walter V. Williams
State Bar No. 21584800
walter@modwill.com
Jack M. Modesett, III
State Bar No. 14244337
MODESETT WILLIAMS, PLLC
515 Congress Ave, Ste 1650
Austin, Texas 78701
Telephone: (512) 472-6097
Facsimile: (512) 481-0130
**ATTORNEYS FOR APPELLANT**

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), Appellant presents the following list of all parties and the names and addresses of counsel:

| | |
|---|---|
| **Appellant:** | LMV-AL Ventures, LLC |
| **Appellant's Counsel:** | Walter V. Williams<br>State Bar No. 21584800<br>walter@modwill.com<br>Jack M. Modesett, III<br>State Bar No. 14244337<br>MODESETT WILLIAMS, PLLC<br>515 Congress Ave, Ste 1650<br>Austin, Texas 78701<br>Telephone: (512) 472-6097<br>Facsimile: (512) 481-0130 |
| **Appellees:** | Texas Department of Aging and Disability Services and Commissioner Jon Weizenbaum |
| **Appellees' Counsel:** | Ken Paxton<br>Attorney General of Texas<br>Charles E. Roy<br>First Assistant Attorney General<br>James E. Davis<br>Deputy Attorney General for Civil Litigation<br>David A. Talbot, Jr.<br>Chief, Administrative Law Division<br>Ari Cuenin<br>Assistant Solicitor General<br>Eugene A. Clayborn<br>State Bar No.: 00785767<br>Asst. Attorney General<br><br>Deputy Chief, Administrative Law Division<br>Office of the Attorney General of Texas |

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-3204
Facsimile: (512) 320-0167
Eugene.clayborn@texasattorneygeneral.gov

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL....…………………….……………ii

TABLE OF CONTENTS………………………………………………….......iv

INDEX OF AUTHORITIES……...………………………………….…vi

ABBREVIATIONS OF RECORDS REFERENCES…………………………vii

STATEMENT REGARDING ORAL ARGUMENT……………………………..1

ISSUES PRESENTED……………………………………………………..1

STATEMENT OF FACTS………………………………………………………2

SUMMARY OF THE ARGUMENT……………………………………………5

ARGUMENT…………………………………………………………………6

    I.      STANDARD OF REVIEW…………………………………6

    II.     THERE IS JURISDICTION UNDER APA SECTION 2001.038 ………………………………………………………6

        A.    LMV CHALLENGES THE APPLICABILITY OF RULE 92.62(M)(1)(B) AND THE VALIDITY AND APPLICABILITY OF DADS' "SECRET" MEASURING RULE …………………………………………………..6

            1.    LMV CHALLENGES THE APPLICABILITY OF RULE 92.62 (M)(1)(B) ……………….................7

            2.    LMV ALSO CHALLENGES THE VALIDITY AND APPLICABILITY OF DAD'S "SECRET RULE".…………………………………8

        B.    LMV HAS STANDING TO CHALLENGE AGENCY ACTIONS THAT IMPOST REGULATORY BURDENS OR IMPEDE BUSINESS OPPORTUNITIES ……………………………………………...…13

      C.      LMV DOES NOT SEEK AN IMPROPER ADVISORY OPINION ……………………………………15

III.    THERE IS JURISDICTION UNDER UDJA ………………..25

      A.      LMV'S ULTRA VIRES CLAIM IS COGNIZABLE UNDER THE UDJA……………….………....25

      B.      LMV'S CLAIM AGAINST THE COMMISSIONER IS NOT JURISDICTIONALLY REDUNDANT ……...…25

    IV.    THE CONSTITUTIONAL CLAIMS ALSO ESTABLISH SUBJECT MATTER JURISDICTION ...................................26

PRAYER…………………………………………………….…27

CERTIFICATE OF COMPLIANCE…………………………..…28

CERTIFICATE OF SERVICE………………………………….29

# INDEX OF AUTHORITIES

**Cases**                                                    **Page(s)**

*City of Alvin v. Pub. Util. Com'n of Texas*, 143 S.W.3d 872, 879 (Tex. App.—Austin 2004, no pet.) ……………………………………………………………………7

*City of El Paso v. Heinrich,* 284 S.W.3d 366 (Tex. 2009)………………………..26

*City Pub. Serv. Bd. of San Antonio v. Pub. Util. Com'n of Texas*, 96 S.W.3d 355, 359 (Tex. App.—Austin 2002, no pet.) ……………………………………………………7

*Combs v. Entm't Publications, Inc.*, 292 S.W.3d 712, 721-24 (Tex. App.—Austin 2009, no pet.)…………………………………………………………………...10

*Creedmoor-Maha Water Supply Corp. v. Texas Com'n on Envtl. Quality*, 307 S.W.3d 505, 526 (Tex. App.—Austin 2010, no pet.)……………………………..27

*Eldercare Properties, Inc. v. Dep't of Human Services*, 63 S.W.3d 551, 558 (Tex. App.—Austin 2001, pet. denied)……………………………………………………...7

*El Paso Hosp. Dist. v. Texas Health & Human Services Com'n*, 247 S.W.3d 709 (Tex. 2008) ……………………………………………………………………….12

*El Paso Hosp. Dist. v. Texas Health and Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) …………………………………………………………………..10

*Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 931 (Tex. 1998)………………22

*S.C. San Antonio, Inc. v. Tex. Dep't of Human Servs.*, 891 S.W.2d 773 (Tex.App.—Austin 1995, writ denied) …………………………………………………...14

*State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 797 (Tex.App.—Austin 1982, writ ref'd n.r.e.) ………………………..…………………………………………………17

*State v. BP Am. Prod. Co.*, 290 S.W.3d 345 (Tex.App.—Austin 2009, pet. denied) …………………………………………………………………………………14

*Teladoc, Inc. v. Texas Med. Bd.*, 453 S.W.3d 606, 616 (Tex. App.—Austin 2014, pet. denied) ……………………………………………………………………11

*Pharmacy Sols., Inc. v. Tex. Health & Human Servs. Comm'n*, 408 S.W.3d 549 (Tex. App.—Austin 2013, pet. denied) ……………………………………………..14

*Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) ………………………………………………..………………………………………6

*Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170 (Tex. 2004) …………………………………………………………….…...7

*Texas Dept. of State Health Services v. Balquinta*, 429 S.W.3d 726, 741 (Tex. App.—Austin 2014, pet. dism'd) …………………………………………..13, 25

*Texas Mun. Power Agency v. Pub. Util. Com'n*, 100 S.W.3d 510, 516 (Tex. App.—Austin 2003, pet. denied) ……………………………………………………27

*Texas Mut. Ins. Co. v. Texas Dept. of Ins., Div. of Workers' Comp.*, 214 S.W.3d 613, 622 (Tex. App.—Austin 2006, no pet.) …………………………………………...17

*Texas State Bd. of Pharmacy v. Witcher*, 447 S.W.3d 520, 528-35 (Tex. App.—Austin 2014, review denied as improvidently granted, Apr. 1, 2016) …………...10

**Statutes**

40 Tex. Admin. Code § 92.62(m)(1)(B) ……………....5,6,7,8,10,13,14,15,19,20,25

Tex. Gov't Code Ann. § 2001.038 ………...…2,6,7,8,9,10,11,12,13,15,16,19,21,22

Tex. Gov't Code Ann. § 2001.003(6)(B) ………………………………………...10

# ABBREVIATIONS AND RECORD REFERENCES

**Abbreviations:**

Appellant LMV-AL Ventures, LLC will be referred to as "LMV."

Appellees Texas Department of Aging and Disability Services and Commissioner Jon Weizenbaum will be referred to, collectively, as "DADS."

The Administrative Procedure Act will be referred to as "APA." Tex. Gov't Code §§ 2001.001–.902.

Assisted living and memory care facilities will be referred to as "ALMC."

The Harbor at Lakeway, LMV's ALMC facility at issue, will be referred to as "the Harbor."

**Record References:**

References to the Clerk's Record are in the form of "CR ____."

**STATEMENT REGARDING ORAL ARUGMENT**

Oral argument is requested. Oral argument should be permitted because it would help the Court crystallize the issues in this case, which affect important areas of law regarding agency rulemaking and interpretation.

**ISSUES PRESENTED**

A published DADS rule governs minimum bedroom-area "usable floor space" for multiple occupancy Alzheimer's patients' rooms in assisted-living facilities. LMV complied with that rule, which by its plain language would allow LMV double occupancy in the rooms in dispute. However, DADS rejected LMV's application for double occupancy, relying on an unpublished "secret" rule that excluded admittedly "usable" floor space if certain dimensions were not met. After subsequent negotiations failed to resolve the dispute, LMV challenged the validity and applicability of DADS' "secret" rule and the applicability (i.e. application) of DADS' published rule. LMV sought a declaration that, *inter alia*: DADS exceeded its legal and statutory authority in making its occupancy determination and rejecting LMV's application for double occupancy; that such actions were *ultra vires*; that DADS' improperly excluded from its calculation floor space that is indisputably "usable;" that DADS' decision was arbitrary and capricious; that the use of the "secret" measuring rule was invalid as secret rulemaking in violation of the APA's notice, publication, and comment provisions as well as the APA requirement that

1

rules be published and made available; and that DADS' interpretation violates substantive and/or procedural due process. DADS sought declaratory relief under the Uniform Declaratory Judgments Act ("UDJA") (Chapter 37 of the Tex. Civ. Prac. & Rem. Code) as well as section 2001.038 of the Administrative Procedure Act ("APA") (Tex. Gov't Code § 2001.038.) [1]

Regarding DADS' plea to the jurisdiction, the issues are:

1. Whether LMV established subject-matter jurisdiction under section 2001.038 of the APA.

2. Whether LMV established subject-matter jurisdiction under the UDJA.

3. Whether LMV established subject-matter jurisdiction under the constitutional claims.

## STATEMENT OF FACTS

LMV incorporates by reference the Statement of Facts in LMV's Appellant's Brief, and adds the following:

Over the course of at least several months, there were numerous discussions between LMV and DADS regarding occupancy and other matters relating to the construction of the facility, prior to DADS issuance of the license. *See* CR 210, DeNucci Aff. ¶ 4-5. DADS representatives conducted onsite inspections between

---

[1] Although these issues are addressed directly in the briefing on the merits, LMV is dissatisfied with this portion of DADS' brief, and feels compelled to clarify the issues presented as described by DADS. *See* Tex. R. App. P. 38.2(a)(1)(B). LMV also incorporates by reference the Issues Presented as described in LMV's Appellant's Brief.

2

October 2014 and March 2015. CR 434, Anglin Aff. ¶ 5. Following construction, LMV increased the number of occupants for which it sought approval. CR 211, DeNucci Aff. ¶ 6. While working with DADS on the occupancy number, the issue arose of DADS' secret calculation method, which excluded "usable floor space" that was less than 10' in any dimension. DADS could not point to any published code or rule that authorized it to exclude any usable floor space. *See* CR 129 (January 9, 2015 email from LMV principal Paul DeNucci to DADS stating that the relevant code provisions do not define usable floor space and requesting reconsideration of the occupancy determination, and other emails in the email string).

Before the license was issued, DADS and LMV representatives communicated multiple times about the occupancy dispute. *See, e.g.,* CR 111 (March 6, 2015 email from DeNucci to DADS that asks DADS to provide the section of code that states that all usable floor space must include a 10' dimension and to allow double occupancy either per DADS' discretion or because the minimum requirements published in the code were met); CR 392 (March 9, 2015 email from DeNucci to DADS noting disagreement on "what the code says" but asking for DADS to reconsider and allow double occupancy).

On March 11, 2015, DADS approved the Harbor's license but LMV's application for double occupancy in the disputed rooms. LMV's attorney emailed DADS representatives on that day and stated:

> [DADS] should approve the memory care rooms for double occupancy because they meet the 160 square foot minimum and because the vertical PTAC units solve a health and sanitation issue, while still providing the residents with sufficient space. … Please consider this to be a repeated formal request that DADS legal/exec today exercise its authority … to "specifically approve" the rooms if DADS' staff is continuing to interpret the vertical PTAC heating and cooling units to somehow render the 'smallest dimension' to be less than ten feet.

CR 156. Following the March 11th approval, LMV and DADS continued to discuss the occupancy issue. *See* CR 152 (March 16, 2015 email from LMV attorney to DADS attorney asking for the exact reason why double occupancy was denied in the disputed rooms, citing the code). On April 8, 2015, the Harbor was issued its actual license.

In summary, there was a protracted back and forth between counsel about the occupancy issue and additional and repeated requests for DADS to reconsider the denial of double occupancy in the rooms in dispute.

## SUMMARY OF THE ARGUMENT

This case is not as complicated as Appellees/Cross-Appellants' Brief[2] would suggest. On the merits, this case is about the meaning of "usable floor space" under 40 TAC § 92.62(m)(1)(B) and whether DADS ignored the plain meaning of those three words in calculating such space at Plaintiff's assisted living facility. It is also about the validity of DADS' "secret rule," unpublished and not promulgated pursuant to the Administrative Procedure Act, which DADS uses to justify omitting admittedly "usable" floor space. *See* Appellant's Brief, incorporated herein by reference.

On jurisdictional issues, this case is also not as complicated as DADS' Brief suggests. Contrary to DADS' contentions, LMV is challenging both the applicability of Rule 92.62(m)(1)(B) and the validity and applicability of DADS' "secret" measuring rule. "Applicability" under APA section 2001.038 and caselaw includes the application of the rule to the facts at hand. Further, the validity of DADS' "secret" rule is challenged, because the rule was not promulgated pursuant to APA requirements and not published. Thus, there is subject matter jurisdiction under APA section 2001.038. LMV has standing to challenge DADS' action because it imposes a regulatory burden and impedes LMV's business opportunities. Under the APA section 2001.038 framework and relevant caselaw, LMV's lawsuit is ripe and

---

[2] Br. for Cross-Appellants, hereinafter "DADS' Brief."

seeks more than an advisory opinion. In addition, there is subject matter jurisdiction for the *ultra vires* claims under the UDJA and subject matter jurisdiction for the constitutional due process claims (which DADS failed to brief).

DADS' plea to the jurisdiction and arguments in its brief are smoke and mirrors, designed to divert attention from DADS' failure to (1) apply the indisputable plain language of its own rules and (2) follow APA requirements for promulgating otherwise "secret" and invalid rules.

## ARGUMENT

### I.    STANDARD OF REVIEW

Whether a plaintiff has alleged facts that, taken as true, affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo*. *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Courts construe the pleadings liberally in favor of the plaintiff and "look to the pleaders' intent." *Id*. at 226.

### II.   THERE IS JURISDICTION UNDER APA SECTION 2001.038

#### A.    LMV Challenges the Applicability of Rule 92.62(m)(1)(B) and the Validity and Applicability of DADS' "Secret" Measuring Rule

As noted by DADS, "The APA provides a specific, narrow waiver of sovereign immunity for lawsuits addressing a rule's validity or applicability." (DADS Br., p. 10.) Tex. Gov't Code § 2001.038(a). There is jurisdiction under the APA because, contrary to DADS assertion that LMV does not challenge a rule's

6

validity or application, LMV challenges both the applicability of Rule 92.62(m)(1)(B) and the validity and applicability of DADS' "secret" measuring rule.

### 1. LMV Challenges The Applicability of Rule 92.62(m)(1)(B)

LMV challenges DADS implementation of 40 Tex. Admin. Code § 92.62(m)(1)(B) ("Rule 92.62(m)(1)(B)") to this particular fact situation. As this Court has held, "applicability" challenges include challenges to the "implementation of the rule to [a] particular fact situation."

> [A]n applicability challenge does not question the overall legitimacy of a rule. Rather, an applicability challenge provides the party challenging the rule the opportunity to obtain a judicial declaration of the implementation of the rule to its particular fact situation.

*City Pub. Serv. Bd. of San Antonio v. Pub. Util. Com'n of Texas*, 96 S.W.3d 355, 359 (Tex. App.—Austin 2002, no pet.), citing *Eldercare Properties, Inc. v. Dep't of Human Services*, 63 S.W.3d 551, 558 (Tex. App.—Austin 2001, pet. denied), abrogated on other grounds, *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170 (Tex. 2004). Indeed, an objection that an agency considered evidence outside the scope of a rule – in this case, whether a section of usable floor space had a dimension smaller than 10' – has been held to be a challenge to the *application* of the rule, not to the validity of the rule. *City of Alvin v. Pub. Util. Com'n of Texas*, 143 S.W.3d 872, 879 (Tex. App.—Austin 2004, no pet.) (describing this Court's decision in *City Pub. Serv. Bd. of San Antonio*, stating "we held that a challenge asserting that the Commission considered evidence outside the

scope of the rule … was a challenge to the application of the rule, not to the validity of the rule's failure to mention use of that evidence.")

LMV alleges "DADS failed to properly **apply** the 'usable floor space' portion of 40 TAC § 92.62(m)(1)(B), and therefore wrongfully denied double occupancy for the 30 Memory Care Rooms." CR 1756, Pl. Second Am. Pet. at ¶ 5. LMV challenges the applicability of the rule as it is applied to the facts at issue, which is clearly allowed by the APA and this Court's caselaw, and gives the court subject matter jurisdiction under Tex. Gov't Code § 2001.038.

## 2. LMV Also Challenges the Validity and Applicability of DADS' "Secret" Rule

Not only is LMV challenging the applicability of Rule 92.62(m)(1)(B), LMV is also challenging the validity and applicability of DADS' "secret rule." DADS did not include certain floor space in its calculation of "usable floor space," based on an unpublished and secret rule. The unpublished secret rule, as articulated by DADS' counsel after the lawsuit was filed, is:

> DADS calculates usable floor space by multiplying length x width to obtain total square footage. Pursuant to the rule, DADS staff does not include any room floor space with a width or length of less than 10 feet. Therefore, if the room's perimeter walls form a walled enclosure jutting into the room, or if the enclosure reduces any adjacent room area to a dimension that is less than ten feet, the interrupted length or width is not considered in the calculation of usable floor space for determining

8

the total of square feet of floor area and whether the room meets the requirements for either single or double occupancy.[3]

It is undisputed that this rule was not promulgated pursuant to the APA and is not published anywhere.[4]    Based on its unpublished rule, DADS denied LMV's application for double occupancy.  LMV challenges the validity of this secret rule.

Under Tex. Gov't Code § 2001.038(a), a party may challenge this "validity" of an agency "rule."   The secret rule is a "rule" under the APA.  The APA defines a "rule" as follows:

> "Rule":
> (A) means a state agency statement of general applicability that:
>     (i) implements, interprets, or prescribes law or policy; or
>     (ii) describes the procedure or practice requirements of a state agency;
> (B) includes the amendment or repeal of a prior rule; and
> (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Tex. Gov't Code Ann. § 2001.003(6).  In other words, a "rule" is defined as "a statement implementing, interpreting, or prescribing the agency's policy that affects

---

[3] CR 290, Def. Resp. to Pl. Mot. Summ. J. & Cross-Mot. Summ. J., at p. 27; CR 121, Def. Resp. to Pl. Interrogatories, Interrogatory No. 1.

[4] *See* CR 121, Def. Resp. to Interrogatories, Interrogatory No. 3; CR 50-70, Pl. Mot. Summ. J., App. 1, Anglin Dep., 19:15-20:8; 33:6-17; 42:24-43:7; 50:3-12; 81:22-24; 86:1-5; 90:10-13; 91:1-4; 97:19-98:22.  DADS argues that "[w]hether an agency policy or rule-interpretation is a 'secret rule' is a mixed question of law and fact," that "the trial court necessarily concluded that" the rule was not a "secret rule" and that "[f]or cross-appeal purposes, that is dispositive of the issue."  (DADS' Br., p. 13-14.)  If that conclusion could be implied from the court's ruling, it is certainly not dispositive of the plea to the jurisdiction.  The court did not grant DADS' plea to the jurisdiction, but instead implicitly held there was subject matter jurisdiction and then granted DADS' motion for summary judgment and denied LMV's.  Where "parties file competing motions for summary judgment, with one granted and the other denied, [courts of appeal] review all the summary judgment evidence presented and determine the propriety of the rulings on both summary judgment motions."  The court "determine[s] all questions presented, and render[s] the judgment the trial court should have rendered."  *Evergreen Nat. Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 675 (Tex. App.—Austin 2003, no pet.)

9

private rights." *Texas State Bd. of Pharmacy v. Witcher*, 447 S.W.3d 520, 528-35 (Tex. App.—Austin 2014, review denied as improvidently granted, Apr. 1, 2016) (Board's disciplinary order, "a statement implementing, interpreting, or prescribing the agency's policy that affects private rights" was a "rule" within the meaning of the APA). *See also El Paso Hosp. Dist. v. Texas Health and Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (agency rate-calculation procedure claimed to be merely an interpretation of its formally promulgated rules, was itself a "rule" that was invalid for failing to comply with APA's notice-and-comment provisions); *Combs v. Entm't Publications, Inc.*, 292 S.W.3d 712, 721-24 (Tex. App.—Austin 2009, no pet.) (letters constituted a "rule" under APA and such rule was invalid for failing to comply with APA procedures).

The secret measuring rule both "interprets … law or policy" and "describes the procedure or practice requirements of a state agency." Tex. Gov't Code Ann. § 2001.003(6)(A). Further, the secret measuring rule, in effect, operates as an amendment to 40 TAC § 92.62(m)(1)(B) and creates a new rule. Tex. Gov't Code Ann. § 2001.003(6)(B).

> [I]n the aftermath of the Texas Supreme Court's *El Paso Hospital* decision, it is equally clear that an agency's "interpretations" or "applications" of existing formally promulgated rules will themselves be held to be "rules" where they have the effect of *amending* the existing rules, or of *creating* new rules, and the other requirements of the APA's "rule" definition are met.

10

*Teladoc, Inc. v. Texas Med. Bd*., 453 S.W.3d 606, 616 (Tex. App.—Austin 2014, pet. denied) (emphasis added). Where the agency goes "beyond a mere restatement of its existing formally promulgated rules or underlying statutes" it has created a "rule" under the APA. *Teladoc, Inc.,* 453 S.W.3d at 608.

Because the secret rule is a "rule" under the APA, LMV "properly invoked the district court's jurisdiction through [APA] section 2001.038 and established its entitlement to summary judgment on its declaratory claim under that statute, as it is undisputed that [the agency] did not promulgate the [rule] in accordance with the APA's notice-and-comment rulemaking requirements." *Teladoc, Inc.*, 453 S.W.3d at 613-614.

The fact that the secret rule was not published does not exclude it from being a "rule" under the APA. In fact, because the secret measuring rule was not promulgated or published pursuant to APA procedures, it is invalid. An overriding policy of the APA is that agency rulemaking needs to be public, to ensure fairness and due process. Where a rule says "do X, and you'll get Y," but an agency creates a secret exception to this rule ("Unless Z"), the APA requires that the exception be adopted pursuant to public notice and comment. Otherwise, agencies would have the ability to create secret rules that would override all their own published rules – secret exceptions that would swallow the APA promulgated rules.

11

The Texas Supreme Court was faced with a similar issue, on quite analogous facts, in *El Paso Hosp. Dist. v. Texas Health & Human Services Com'n*, 247 S.W.3d 709 (Tex. 2008). At issue was how HHSC calculated rates for Medicaid payments to hospitals. HHSC established a cut off date (Feb. 28th) used in calculating rates that the hospitals contended resulted in only "95-97 percent" of claims being used to calculate rates, where the rule required a "true cost average." Thus, HHSC's calculation method omitted a certain portion of the claims, while the rule itself provided no support for omitting any portion of the claims. Hospitals sued under APA section 2001.038 for declaratory judgment challenging the validity or applicability of a rule. HHSC defended the suit arguing that the Feb. 28th cutoff was not a rule itself, but rather an interpretation of the rules. The Texas Supreme Court disagreed, finding that the cutoff date was a rule. And because it was not promulgated pursuant to the APA procedures, it was invalid.

Just like how the HHSC only considered a portion of claims (95-97%) in its decision making, contrary to the plain language of the regulation, DADS is only considering a portion of "usable floor space," contrary to the plain language of the regulation. While HHSC argued, like DADS does now, that the "rule" was really only an interpretation, the court disagreed. *El Paso Hospital District* is binding precedent, and requires that if DADS is going to only consider a portion of "usable square feet" pursuant to a measuring rule that excludes space less than 10' in

dimension, DADS needed to promulgate that rule pursuant to the APA. Because DADS has failed to do so, the measuring rule is invalid and all "usable floor space" must be included.

There is jurisdiction under APA section 2001.038 because LMV challenges both the applicability of Rule 92.62(m)(1)(B) and the validity and applicability of DADS' "secret" measuring rule.

B.    **LMV Has Standing to Challenge Agency Actions that Impose Regulatory Burdens or Impede Business Opportunities**

DADS argues that LMV lacks standing because the right to have double occupancy is insufficient. DADS argues that having double occupancy in the memory care rooms is only an "expectation" interest that, DADS argues, falls outside a "right or privilege" under APA section 2001.038. However, the APA, as interpreted by the courts, provides for standing in cases like this case. "A business can have standing to challenge the legality of governmental actions based on pleadings or proof that the actions impose regulatory burdens … or impede business opportunities." *Texas Dept. of State Health Services v. Balquinta*, 429 S.W.3d 726, 741 (Tex. App.—Austin 2014, pet. dism'd). DADS' application of Rule 92.62(m)(1)(B) using DADS' secret measuring rule imposes a regulatory burden on LMV and impeded its business opportunity by preventing it from filling its assisted living facility to full capacity. This is sufficient for standing.

13

The cases cited by DADS are distinguishable. In *Sw. Pharmacy Sols., Inc. v. Tex. Health & Human Servs. Comm'n*, 408 S.W.3d 549 (Tex. App.—Austin 2013, pet. denied), plaintiff organization's members' economic loss was not based on regulatory burdens, but instead based on new legislation. *See id.*, at 565 ("At most, American Pharmacies had an 'expectation based on the anticipated continuance' of the prior law," which was modified by legislation, not by regulation.) In *S.C. San Antonio, Inc. v. Tex. Dep't of Human Servs.*, 891 S.W.2d 773 (Tex.App.—Austin 1995, writ denied) the court held, *inter alia*, that plaintiff Southwest General only had an expectancy of receiving additional reimbursement contingent on the hospital's level of services provided to indigent patients compared to that of other hospitals. Southwest General had erred and miscalculated its own figures when applying for additional funding, and thereby failed to meet the top twenty-five percent required for additional reimbursement. It was Southwest General's own error in calculation that cost it the additional reimbursement, without the error the agency would have provided the additional reimbursement. *Id.*, at 778. In that case, nothing the agency did resulted in any economic loss, regulatory burden, or impediment to business opportunities. In *State v. BP Am. Prod. Co.*, 290 S.W.3d 345 (Tex.App.—Austin 2009, pet. denied), at issue was title to submerged land under the San Jacinto River. All *BP Am. Prod. Co.* stands for, as far as APA Section 2001.038 is concerned, is that the section may be used to test the applicability or

14

validity of a rule, but not to try title to land subject to a state claim. DADS' reliance on this decision is misplaced because at issue in the present case is not disputed title, but the application of Rule 92.62(m)(1)(B) and the application and validity of the secret measuring rule.

## C.    LMV Does Not Seek an Improper Advisory Opinion

DADS argues that, "The conclusion of an administrative process … moots subsequent attempts to obtain relief under section 2001.038 regarding rules applied during those proceedings." (DADS' Br., p. 17.)  DADS argues that because DADS already issued the license (without double occupancy in the disputed rooms), LMV's request for judicial involvement would amount to a mere advisory opinion.[5]

---

[5] The cases DADS cites in support of its "mootness" argument are not analogous to this case.  In *Tex. Logos, L.P. v TxDOT*, 241 S.W.3d 105 (Tex.App.—Austin 2007, no pet.), a sign company that failed to win a state contract challenged the rules implemented by TxDOT on how to award sign contracts.  The court of appeals noted that Tex. Logos was aggrieved by TxDOT's award of the sign contract to a competitor and was primarily challenging that award, not a rule under APA section 2001.038. *Id*. at 123.  The purpose of APA section 2001.038 is to challenge the validity or application of a rule; it is not an alternative means of challenging TxDOT's award of a sign contract to a competitor.

In *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519 (Tex. App.—Austin 2002, pet. denied), an environmental group challenged a ruling by the Texas Natural Resource Conservation Commission[5] (TNRCC) that occurred before the group was even formed. *Id*. at 523.  Notice of the proposed action was published two years before TNRCC's decision. *Id*. The group failed to exhaust administrative remedies by requesting a contested case hearing or intervening at all in the administrative process.  The court held that the APA was not a workaround when the environmental group never involved itself in the administrative process. *Id*. at 529. (The group could also not identify the specific it was challenging. *Id*.)

*Charlie Thomas Ford, Inc. v. A.C. Collins Ford, Inc.*, 912 S.W.2d 271 (Tex. App.—Austin 1995, writ dism'd) was an appeal of a contested case heard by the Texas Motor Vehicle Commission.  A car dealership sought to relocate and was denied approval after a contested hearing in front of the Commission.  The dealership failed to timely file a motion for rehearing, as required to preserve error under the Administrative Procedure and Texas Register Act (now APA) and the Motor Vehicle Commission Code which governed the proceeding.  The trial court dismissed the subsequent lawsuit, and the court of appeals affirmed.  It held that the trial court property dismissed the lawsuit and, having determined there was no valid "suit for judicial review of the Commission's final order" because of the dealership's failure to preserve error, the court held that a declaratory judgment could have no legal effect. *Id*. at 275.

Finally, *KEM Texas, Ltd. v. Texas Dept. of Transp.*, 03-08-00468-CV, 2009 WL 1811102 (Tex. App.—Austin June 26, 2009, no pet.) (not designated for publication), involved the owner of a sign easement contesting TxDOT's denial of its request to erect a billboard.  The owner did not plead an APA section 2001.038 claim and

DADS' position is that LMV could challenge only the *threatened* application of its rules, not the actual application of its rules. This argument contravenes the plain language of APA section 2001.038. APA section 2001.038(a) provides:

> The validity or applicability of a rule … may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

Tex. Gov't Code § 2001.038. If a declaratory judgment under this section were only available before the rule was applied (i.e. when the rule's application is merely "threatened"), then it would say so. Instead, the plain language of the statute makes clear that a plaintiff may challenge "*the rule or its threatened application.*" If a plaintiff could only invoke section 2001.038 in the limited window when a rule is threatened to apply but has not been actually applied yet, then the statute would leave out "the rule" and just say "the rule's threatened application." While "one is not *required* to wait until the rule is attempted to be enforced against him before he may resort to declaratory relief," one may challenge either the application or threatened application of a rule. *Texas Mut. Ins. Co. v. Texas Dept. of Ins., Div. of Workers' Comp.*, 214 S.W.3d 613, 622 (Tex. App.—Austin 2006, no pet.), *quoting State Bd.*

apparently did not challenge the validity or application of any rule; it just challenged TxDOT's decision on the merits. APA section 2001.038 was mentioned only in *dicta* in a single footnote in the opinion. None of these cases are analogous to the facts of the present case.

16

*of Ins. v. Deffebach*, 631 S.W.2d 794, 797 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (emphasis added).

Moreover, the issue was not mooted by DADS' issuance of a license only approving single occupancy in the disputed rooms, instead the controversy continued as it had for several months. For several months prior to officially approving the license (and denying the application for double occupancy in the rooms at issue), LMV and DADS had numerous discussions back and forth about the occupancy and other issues. *See* CR 210, DeNucci Aff. ¶ 4-5. DADS representatives conducted onsite inspections between October 2014 and March 2015. CR 434, Anglin Aff. ¶ 5. Upon learning that DADS would not approve the disputed rooms for double occupancy, LMV representatives repeatedly requested specific authority that authorized DADS' exclusion of otherwise "usable floor space." *See* CR 129 (January 9, 2015 email from LMV principal Paul DeNucci to DADS stating that the relevant code provisions do not define usable floor space and requesting reconsideration of the occupancy determination); CR 111 (March 6, 2015 email from DeNucci to DADS that asks DADS to provide the section of code that states that all usable floor space must include a 10' dimension and to allow double occupancy either per DADS' discretion or because the minimum requirements published in the code were met); CR 392 (March 9, 2015 email from DeNucci to DADS noting disagreement on "what the code says" but asking for DADS to

17

reconsider and allow double occupancy); CR 156 (email on the same day DADS approved issuance of the license from DADS' attorney asking for reconsideration[6]). DADS was unable to provide any published authority for excluding the "usable floor space" in its calculations. LMV repeatedly asked DADS to reconsider, but DADS refused. After approval of the license on March 11, 2015, LMV and its counsel again objected to DADS' decision and asked for an authoritative basis for denying double occupancy in the disputed rooms. *See* CR 152 (March 16, 2015 email from LMV attorney to DADS attorney asking for the exact reason why double occupancy was denied in the disputed rooms, citing the code). DADS' mootness argument assumes that there was a discrete application for double occupancy and a discrete denial, but in reality the occupancy issue played out for several months and was not resolved by DADS' issuance of a license to the Harbor. It would truly elevate form over substance to say that the court has jurisdiction if the last email before the lawsuit was filed was from DeNucci's counsel requesting reconsideration, rather than from DADS' denying reconsideration, but that is precisely what DADS' argument implies.

---

[6] The email stated: "[DADS] should approve the memory care rooms for double occupancy because they meet the 160 square foot minimum and because the vertical PTAC units solve a health and sanitation issue, while still providing the residents with sufficient space. … Please consider this to be a repeated formal request that DADS legal/exec today exercise its authority … to "specifically approve" the rooms if DADS' staff is continuing to interpret the vertical PTAC heating and cooling units to somehow render the 'smallest dimension' to be less than ten feet." CR 156.

18

Strangely, after arguing that LMV should have brought an APA section 2001.038 challenge prior to DADS' initial licensure decision, DADS then argues that LMV should have filed another request for double occupancy *post*-licensure. DADS argues that the failure to repeat its request in a formal application for an increase in occupancy post-licensure means that judicial intervention would be merely advisory.

First, DADS cannot have it both ways. DADS cannot argue that the issue is moot but also that LMV has the opportunity to reapply for the originally sought occupancy under the same rules in dispute. Clearly LMV would be subjected to the same "threatened application" of the Rule 92.62(m)(1)(B) and the "secret rule" in the event of a *post*-licensure request for additional capacity as it was in the initial application. (This argument actually further supports LMV's case; LMV has a valid claim under APA section 2001.038 with regard to both the rules already applied and those "threatened" to be applied again in the event of a post-licensure application for increased occupancy.)

Second, a post-licensure application for increased occupancy would have been futile. There is no reason to believe that DADS would approve a *post*-licensure request for double occupancy in the disputed rooms after denying the *pre*-licensure request (and repeated requests for reconsideration). DADS does not dispute that Rule 92.62(m)(1)(B)'s "usable floor space" requirements apply to both pre- and post-

licensure applications for double occupancy. Indeed, 40 TAC § 92.18(d) specifies that for post-licensure request for increased capacity, a facility must meet the licensure requirements in Subchapter D,[7] relating to Facility Construction. The "usable floor space" requirement is part of Subchapter D. It is completely implausible to suggest that after using the secret measuring rule to deny LMV's application for double occupancy and repeatedly rejecting LMV's requests for reconsideration, DADS would somehow reach a different conclusion under a subsequent post-licensure application with identical "usable floor space" requirements. If we take DADS at its word, it would certainly also apply the same "secret" rule to exclude usable floor space from the calculation. Indeed, suggesting there could be a different outcome if LMV filed an additional application would be to admit that DADS acted arbitrarily in denying LMV's request.[8]

Further, the APA makes clear that the declaratory judgment remedy is available regardless of whether a plaintiff has exhausted all administrative remedies with regard to the rule. "A court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question." Tex. Gov't. Code § 2001.038(d). There is

---

[7] 40 TAC § 92.61-92.64.
[8] Moreover, it would be injudicious and wasteful to require LMV to go back and submit such an application and then restart this entire litigation.

simply no requirement that LMV seek a post-licensure request for increased occupancy before challenging DADS' rules.[9]

It is Kafkaesque to suggest that the courthouse is closed to LMV because LMV (1) waited until DADS denied its application for double occupancy and (2) did not submit a subsequent post-licensure application for double occupancy. DADS' arguments would shut the courthouse doors on LMV regardless of what LMV did. LMV filed the lawsuit after being rejected for double occupancy in the disputed rooms at licensure, and after lengthy negotiations and discussions failed to materialize a compromise or reconsideration. As a result of that timeline, DADS argues (first) that LMV's dispute is moot because DADS already applied the rules in dispute and rendered a final decision and (second) that LMV should have sought a post-licensure request for increased occupancy—a pseudo exhaustion of remedies argument. However, if LMV did seek a post-licensure request for increased occupancy, it would have certainly been denied, and then, according to DADS, LMV's claim would be mooted by the agency's final decision. (Under DADS' theory, an agency would always be able to escape APA section 2001.038 review by issuing a ruling and therefore, according to DADS, mooting any justiciable dispute.) If, on the other end of the spectrum, LMV filed a lawsuit after the initial request for

---

[9] Indeed, under DADS' "mootness" argument, LMV filed the challenge to the rules at the right time, when the rules' threatened application would result in denial of a post-licensure request for increased occupancy.

21

occupancy but before licensure, the dispute would not be ripe – DADS would not yet have applied the "secret" rule to limit LMV's occupancy. Under DADS' theory, at what time would LMV ever be able to bring an APA section 2001.038 challenge? The answer would be "never." DADS' logic would mean that LMV would not get through the courthouse doors no matter when it filed its suit. That is clearly not what is intended by APA section 2001.038, which allows for a challenge to an actual or prospective application of a rule, and does not require a plaintiff to first request the agency to rule on the validity or applicability of the rule in question.

In contrast to DADS' Kafkaesque interpretation of the law, LMV's position is in harmony with the plain language of APA section 2001.038 as well as caselaw on ripeness. In *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 931 (Tex. 1998), property owners filed a takings suit after the Town of Sunnyvale denied their application for a planned residential development. In an argument that echoes DADS' argument in this case, the Town argued that the owners' dispute was not ripe because the owners never reapplied or sought a variance. The court rejected the Town's argument:

> The Town maintains that the Mayhews' claims regarding the denial of their planned development application are not ripe because the Mayhews submitted only one planned development application and did not thereafter reapply for development or submit a "variance." The Mayhews counter that, under the circumstances of this case, their planned development application and amended request for 3,600 units were sufficient, and that any further applications would have been futile. We agree with the Mayhews. …

22

> We accordingly conclude that, under the circumstances of this case, the Mayhews were not required to submit additional alternative proposals, after a year of negotiations and $500,000 in expenditures, to ripen this complaint. …
> The Town clearly was not going to approve the Mayhews' development proposal for 3,600 units, making a subsequent application or variance request for 3,600 units a futile act. We therefore hold that the Mayhews' claims that the Town violated their constitutional rights by denying their planned development proposal for 3,600 units are ripe for this Court's review.

*Mayhew*, 964 S.W.2d at 931-932. The court looked to the fact that the specifics of the development were determined through lengthy negotiations between the Town and the owners, and that there were meetings and attempts to compromise. *Id*. at 931.

Like in *Mayhew*, the construction and permitting of an ALMC facility is a lengthy process involving several inspections by DADS representatives and frequent communication and negotiation. DADS' Brief, at first blush, might lead one to the conclusion that the license application process for ALMC facilities is like a contested hearing, with the facility putting on evidence, arguing its case, and then an administrative law judge issuing a ruling. But it is not like that. Instead, the process of getting a license for an ALMC facility like the Harbor is much more akin to the complicated, drawn out, and collaborative process in the *Mayhew* case. The permitted occupancy of LMV's facility was an issue that was discussed and debated at length between DADS and LMV, with changes to the occupancy sought, multiple inspections and measurements, requests for the basis of the "secret" measuring rule,

and discussions between counsel to try to resolve the dispute. See record cites discussed *infra*, p. 2 (CR 210, CR 434, CR 129, CR 111, CR 392, CR 156). The controversy was not mooted by DADS' issuance of a license for occupancy, and the dispute was ripe for LMV to pursue declaratory relief under *Mayhew*.

Moreover, DADS' position is bad policy. It is ludicrous to suggest that in order to thread the jurisdictional needle, an aggrieved party has to rush to the courthouse and file a lawsuit before efforts to resolve the dispute with the agency have been concluded. Agencies and the entities they regulated should be free to work together to resolve disputes and complete regulated projects under a spirit of compromise and negotiation. If claims under the APA were mooted by an agency's final decision, however, regulated entities would abandon efforts to resolve disputes amicably, and would instead rush quickly to the courthouse the moment a dispute arose, hoping to file a lawsuit before the agency issued its final ruling and thus mooted the case. Under DADS' regime, there would be no hope for efficient resolution of these sorts of disputes; every little dispute between an agency and those its regulates would end up in the courthouse, especially in highly regulated industries like assisted living.

Finally, DADS misconstrues its discretion. (DADS' Br., p. 19.) DADS has discretion to *approve* a room that does *not* meet the minimum usable floor space standards, but has no discretion to <u>not</u> <u>approve</u> a room that <u>does</u> meet the minimum

24

standards. That LMV asked DADS to exercise such discretion is not relevant to whether DADS misapplied Rule 92.62(m)(1)(B) and whether the "secret" rule is valid and applicable.

## III. THERE IS JURISDICTION UNDER UDJA

### A. LMV's *Ultra Vires* Claim is Cognizable Under the UDJA

LMV concedes that its claims challenging the applicability and validity of DADS' rules are not cognizable under the UDJA as well as the APA, because such claims would be redundant of the APA claims. However, the *ultra vires* claim against the Commissioner is not redundant and is properly brought pursuant to the UDJA.

### B. LMV's Claim Against the Commissioner is Not Jurisdictionally Redundant

Sovereign immunity does not apply to *ultra vires* acts. *See Texas Dept. of State Health Services v. Balquinta,* 429 S.W.3d 726, 748-749 (Tex. App.—Austin 2014, pet. dism'd) ("Sovereign immunity is held not to bar [*ultra vires*] claims because, in theory, acts that are not lawfully authorized … are not considered to be acts of the State or the agency itself, and the remedy of compelling the 'official' to comply with the law, while binding on the State, 'do[es] not attempt to exert control over the state [but] attempt[s] to reassert the control of the state.'") (citations omitted). In acting in contravention of its own regulations, the Commissioner's denial of LMV's application for double occupancy was *ultra vires*, and subjects the

25

Commission to suit pursuant to the UDJA. Governmental immunity does not bar claims against the Commissioner in his official capacity for acting *ultra vires*. *City of El Paso v. Heinrich,* 284 S.W.3d 366 (Tex. 2009) (where official acted without legal authority or failed to perform a purely ministerial act, suit is not barred by sovereign immunity). The Commissioner does not have discretion to willy-nilly determine whether single or double occupancy is allowed. Instead, all "usable floor space" must be measured and if the square footage exceeds 160 for the type of facility at issue, the facility must be licensed for double occupancy. Approving double occupancy where the minimal requirements are met is not discretionary; it is a ministerial act that the Commissioner must perform. Refusal to do so is *ultra vires,* and suit against the Commissioner in his official capacity to force him to comply with DADS' own regulations is not barred by sovereign immunity. *Id*.

## IV.  THE CONSTITUTIONAL CLAIMS ALSO ESTABLISH SUBJECT MATTER JURISDICTION

The trial court has "inherent jurisdiction to protect against *ultra vires* or unconstitutional agency actions." *Creedmoor-Maha Water Supply Corp. v. Texas Com'n on Envtl. Quality*, 307 S.W.3d 505, 526 (Tex. App.—Austin 2010, no pet.). *See also Texas Mun. Power Agency v. Pub. Util. Com'n*, 100 S.W.3d 510, 516 (Tex. App.—Austin 2003, pet. denied) ("a declaratory judgment to interpret the scope of an agency's statutory authority in light of a constitutional right or property interest

is sufficient to invoke the trial court's jurisdiction and to waive sovereign immunity").

LMV alleges that DADS' secret rule violates procedural and substantive due process guaranteed by the U.S. Constitution and Texas Constitution. CR 1763, Pl. Second Am. Pet., ¶¶ 33(4). DADS did not respond to this argument in the trial court and has not responded to this argument in this Court – untimely though it would now be. This is an independent basis for jurisdiction and another reason this Court should affirm the trial court's denial of DADS' plea to the jurisdiction. LMV incorporates by reference its briefing on the constitutional issues in its opening brief. *See* Appellant LMV's Br., p. 30-31.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant LMV prays that the Court: affirm the trial court's denial of DADS' plea to the jurisdiction, reverse the trial court's sustaining of Appellees' objections to the DeNucci affidavit, reverse the judgment of the trial court, render judgment in favor of Appellant LMV and against Appellees, and for such further relief to which Appellant LMV may show itself justly entitled.

Respectfully submitted,

/S/ WALTER V. WILLIAMS
WALTER V. WILLIAMS
STATE BAR NO. 21584800

27

WALTER@MODWILL.COM
JACK M. MODESETT, III
STATE BAR NO. 14244337
MODESETT WILLIAMS, PLLC
515 CONGRESS AVE, STE 1650
AUSTIN, TEXAS 78701
TELEPHONE: (512) 472-6097
FACSIMILE: (512) 481-0130
**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word 2013, this brief contains 5756 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

/s/Walter V. Williams
Walter V. Williams

28

**CERTIFICATE OF SERVICE**

I hereby do certify that in compliance with the provisions of Rule 21a, a true and correct copy of the above and foregoing has been electronically served via ProDocs efiling system on this 28TH day of September, 2016 as follows:

Ken Paxton
Attorney General of Texas

Charles E. Roy
First Assistant Attorney General

James E. Davis
Deputy Attorney General for Civil Litigation

David A. Talbot, Jr.
Chief, Administrative Law Division

Ari Cuenin
Assistant Solicitor General
Office of the Attorney General of Texas
ari.cuenin@texasattorneygeneral.gov

Eugene A. Clayborn
Deputy Chief, Administrative Law Division
Office of the Attorney General of Texas
P. O. Box 125478, Capitol Station
Austin, Texas 78711-2548
Eugene.clayborn@texasattorneygeneral.gov

/s/Walter V. Williams
Walter V. Williams